CITIBANK (SOUTH DAKOTA), N.A., Appellee,

v.

PERZ, Appellant.

[Cite as *Citibank (South Dakota), N.A. v. Perz,* 191 Ohio App.3d 575, 2010-Ohio-5890.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–10–1033.

Decided Dec. 3, 2010.

576

Melissa A. Hager and James Oh, for appellee.

Barry E. Savage, for appellant.

---

COSME, Judge.

{¶ 1} This is an appeal from a summary judgment in favor of appellee for the full amounts due and owing on two credit-card accounts and against appellant on her counterclaim. The trial court held that appellee's negotiation of two checks for less than the outstanding balances, which were offered by appellant in complete satisfaction of the accounts, did not constitute an accord and satisfaction. For the following reasons, we reverse the judgment of the Toledo Municipal Court.

## I. Background

{¶ 2} The relevant facts in this case are undisputed. Appellee, Citibank (South Dakota), N.A., extended two separate credit-card accounts to appellant, Julie Perz, also known as Julie Benoit, who used the extensions of credit to make various purchases. As of May 2004, appellant had a balance of $4,285.63 on one account, which had an account number ending in 2247, and a balance of $9,016.80 on the other account, which had an account number ending in 6898.

{¶ 3} On May 12, 2004, appellant sent a check to appellee in the amount of $1,000 in payment of account number 2247 and a check for $3,000 in payment of account number 6898. Both checks were signed by Sally Perz, appellant's mother, and were restrictively endorsed as follows: "The proceeds of this draft accepted in full settlement of all claims against Julie Benoit on credit card account [followed by account number]."

{¶ 4} Both checks were accompanied by a letter from appellant's counsel, which stated:

{¶ 5} "We represent Julie Benoit who is delinquent on the above account as well as other credit card accounts. Ms. Benoit is a candidate for bankruptcy.

{¶ 6} "In the interests of avoiding bankruptcy, Ms. Benoit has secured a loan from a family member to offer a full and complete settlement of this account for the [enclosed] sum. A check from Sally A. Perz in the [stated] amount * * * is

enclosed which contains an endorsement whereby if accepted it will settle any liability Ms. Benoit has on the account in full. The check is stapled to this letter.

{¶ 7} "If you are agreeable to a full and complete settlement of the account as proposed you may negotiate the check and apply it to the account as 'settlement in full.' If the settlement is not acceptable, please return the check to the undersigned within fourteen (14) days from the date of this letter and Ms. Benoit will pursue filing bankruptcy."

{¶ 8} Appellee cashed the checks, applied the amounts to the balance of appellant's accounts, and continued to send monthly statements for the remaining balances. On April 13, 2005, appellee filed a complaint in the Toledo Municipal Court, seeking to recover the remaining balances. Attached to the complaint were two affidavits by Pam Cline, an employee of Citibank's parent corporation, dated September 14, 2004. In each affidavit, Cline identified the respective account and stated, "Exhibit A attached hereto is a hard copy printout of the financial information, including the balance owing" on that account. Attached to Cline's affidavits were several account statements reflecting the last closing dates for which a charge was incurred. On June 14, 2005, appellant filed an answer, which alleged accord and satisfaction as an affirmative defense, and a counterclaim, which alleged that she had settled her accounts with appellee in May 2004, and sought damages for "wrongful filing of the Complaint in this action."

{¶ 9} On February 15, 2006, appellee filed a motion for summary judgment on the outstanding account balances, arguing that it "did not agree to accept Defendant's [May 2004] payments on either account as settlement in full." In support of its motion, appellee attached the following documents: (1) the entire account history for each of appellant's credit cards (Exhibits A and B), (2) the affidavits of Pam Cline previously submitted along with the complaint (Exhibits C and D), (3) two documents entitled "Card Agreement," each containing the provision, "We can accept late or partial payments, as well as payments that reflect 'paid in full' or other restrictive endorsements, without losing any of our rights under this Agreement" (Exhibits F and G), and (4) the letters and checks sent by appellant and her counsel on May 12, 2004 (Exhibits H and I). Appellee maintained that the negotiation of appellant's restrictively endorsed checks did not qualify as an accord and satisfaction because of the partial-payment provisions in the card agreements and because there was no good-faith dispute as to the balance of either account.

{¶ 10} Also on February 15, 2006, appellant filed a motion for summary judgment on appellee's complaint, arguing accord and satisfaction. In support, appellant attached her own affidavit, in which she attested to having borrowed $4,000 from her mother in order to make the offers to Citibank in an effort to avoid filing for bankruptcy. She also stated, "In making the offer of settlement I

had changed my position in that I had borrowed money, and in reliance upon their acceptance [of the checks], I did not file bankruptcy."

{¶ 11} The trial court ordered the parties to submit findings of fact and conclusions of law. In her proposed findings, appellant submitted that the card agreements attached to appellee's motion for summary judgment "are not supported by Affidavit" and that the affidavits of Pam Cline do not support any "allegation made in the [plaintiff's] Motion for Summary Judgment other than the balances due on the accounts." Thus, appellant proposed a finding that the partial-payment provisions cannot be enforced because the card agreements had "not been authenticated by * * * affidavit as being applicable to both accounts."

{¶ 12} In a decision journalized on January 7, 2010, the trial court consolidated the opposing motions for decision, adopted appellee's findings of fact and conclusions of law, and granted summary judgment in favor of appellee on its complaint and appellant's counterclaim, thus awarding appellee the aggregate account balance of $9,848.13 plus interest. In so doing, the trial court first found that the account statements were sufficient to establish the amounts due on each account, and then proceeded to the issue of accord and satisfaction. The trial court held that appellant's partial payments did not constitute a valid settlement or accord and satisfaction, for three reasons: (1) the partial-payment provision in "the terms and conditions of the original agreements Defendant entered into with Plaintiff * * * clearly states that Plaintiff may accept restrictively endorsed [partial] payments, without satisfying the debt in full," (2) "[t]here is no evidence of communication between the parties that alludes to a discussed settlement," and (3) "[t]he letters sent to Plaintiff, accompanied by two restrictively endorsed checks, do not indicate a dispute as to the balance claimed by Plaintiff."

{¶ 13} Appellant now appeals this judgment, asserting six assignments of error. In order to facilitate a logical analysis, we have elected to discuss the assigned errors in groups based upon the common issues presented by them.

## II. Partial–Payment Provision

{¶ 14} In her first two assignments of error, appellant asserts:

{¶ 15} "1. The documents filed in support of Plaintiff's Motion for Summary Judgment do not meet the requirements [of] Rule 56 of the Ohio Rules of Civil Procedure and to grant judgment thereon was in error.

{¶ 16} "2. Plaintiff's Exhibit F and G do not support the granting of a Motion for Summary Judgment."

{¶ 17} Appellant argues that the two card agreements attached to appellee's motion for summary judgment, which contain the partial-payment clauses, were not authenticated by affidavit and that appellee did not offer any evidence

establishing that the terms and conditions of those agreements applied to her accounts or constituted her actual agreement with Citibank. Appellant contends, in particular, that appellee has offered no proof that she "signed any acknowledgment as to the terms and conditions or that the terms and conditions were even sent to [her]."

{¶ 18} Appellee argues that it "presented to the trial court affidavits attesting as to amounts owed on the accounts, copies of billing statements for the accounts * * *, and copies of card agreements governing the accounts." Appellee maintains that this evidence is sufficient to establish a prima facie case for money owed on a credit-card account and to support a motion for summary judgment. Appellee further contends that appellant's use of the credit cards created a legally binding contract.

{¶ 19} We agree with appellant. The issue here is not whether appellant's use or continued use of the credit cards created a legally binding contract, but whether the card agreements attached to appellee's motion for summary judgment represent that contract. The account statements, as authenticated by the affidavits of Pam Cline, may certainly be sufficient in themselves to establish a prima facie case for money originally owed on the accounts, but appellee's claim for the original amounts was tied to and depended upon a determination that it had not agreed to settle or compromise those accounts. In that regard, appellee is seeking to enforce a term in the card agreements, and it must properly authenticate those documents and establish that they are binding on appellee in order have them considered on a motion for summary judgment.

{¶ 20} In *Discover Bank C/O DFS Servs., L.L.C. v. Lammers,* 2d Dist. No. 08–CA–85, 2009-Ohio-3516, 2009 WL 2105990, Discover Bank filed a motion for summary judgment on a delinquent credit-card account and asked for post-judgment interest at the rate of 19.8 percent pursuant to the terms of a 2007 card-member agreement that it submitted along with its motion. The account statements in that case showed, however, that the cardholder began using the card in January 2005 and continued using the card through March 2007. The court held that although the account statements were sufficient to establish the amounts due, the postjudgment-interest provision in the 2007 agreement could not be enforced against the cardholder in the absence of proof that the agreement was sent to and binding upon her. The court explained:

{¶ 21} "The reason for Discover's failure to submit the 2005 credit-card agreement is unclear. Compare *Discover Bank v. Poling,* Franklin App. No. 04AP–1117, 2005-Ohio-1543 [2005 WL 737404], where Discover provided the trial court with the application and with the card-member agreement that was sent to the defendant when his application for credit was accepted. Id. at ¶ 13. Because the terms of the 2005 agreement are not in the record, there is no basis for

concluding what the appropriate interest rate under that agreement would be. Furthermore, Discover could not unilaterally change the terms of the 2005 agreement without Lammers's assent and valid consideration for the change. [*Bank One, Columbus, N.A. v.*] *Palmer* [ (1989) ], 63 Ohio App.3d 491, 494, 579 N.E.2d 284. Credit card companies sometimes accomplish this by sending the cardholder notice of a change in the terms of the agreement, with an indication that continued use of the card will be deemed to constitute assent to the change.

{¶ 22} " * * *

{¶ 23} "The only date reflected on the 2007 Discover Card Account Agreement is a printed notation at the top, which bears the date of 'April–11–2007.' However, there is no evidence as to when the Agreement may have been sent to Lammers. In fact, [the] affidavit [submitted by Discover] does not even aver that the Agreement was sent. We cannot assume in the absence of some evidence in the record, that the 2007 card-member agreement was sent to Lammers, much less that she received it." Id. at ¶ 33 and 38.

{¶ 24} The court also found no basis for concluding that Lammers accepted the 2007 cardholder agreement by using the credit card in 2007, "because Discover failed to present evidence that it sent the 2007 Agreement to Lammers." Id. at ¶ 43.

{¶ 25} In *FIA Card Servs., N.A. v. Ryan,* 10th Dist. No. 09AP–193, 2009-Ohio-6660, 2009 WL 4861441, the Tenth Appellate District reached the same conclusion in regard to a mandatory-arbitration clause contained in a revised 2001 credit-card agreement attached to the card issuer's motion for summary judgment. The court held:

{¶ 26} "The April 2001 document is the only credit card agreement submitted by appellee and it contains a mandatory binding arbitration provision. However, this evidence shows only a generic credit card member agreement from MBNA and no evidence that this agreement applied to appellant's account. There is no evidence of the original credit card agreement, or any application signed by appellant. There is no affidavit of anyone with personal knowledge stating that appellant assented to such an agreement. * * *

{¶ 27} "Appellee has not met its threshold burden * * * showing that it is entitled to summary judgment. The April 2001 agreement is inadequate to establish that it has any relation to appellant or that he is bound by its arbitration clause. There is no evidence that the agreement applied to appellant, that it had ever been sent, or that he had ever assented to be contractually bound." Id. at ¶ 19–20.

{¶ 28} Appellee also argues that "under South Dakota law, which applies based on the South Dakota choice-of-law provision in the Card Agreements,

\* \* \* use of a credit card creates a binding agreement [under] S.D. Codified Laws, § 54–11–9." In contractual choice-of-law situations, the law of the chosen state is applied to resolve the substantive issues in the case, while the law of the forum state will govern procedural matters. See *Burns v. Prudential Secs., Inc.*, 167 Ohio App.3d 809, 2006-Ohio-3550, 857 N.E.2d 621, ¶ 16, fn. 5; *White v. Crown Equip. Corp.*, 160 Ohio App.3d 503, 2005-Ohio-1785, 827 N.E.2d 859, ¶ 13.

{¶ 29} The problem with appellee's attempt to invoke the choice-of-law provision in the card agreements is that it begs its own conclusion. As explained in *Citibank (South Dakota), N.A. v. Wilson* (Mo.App.2005), 160 S.W.3d 810, 812–813:

{¶ 30} "Citibank also argues that South Dakota law applies because the credit card agreement contained a choice of law provision. This court agrees with Citibank that a valid choice of law provision in a contract would bind the parties. However, Citibank disregards the fact that the only choice of law provision before the trial court was contained in the revised agreement, the validity of which is in question. This court would have to resort to circular logic to reach Citibank's conclusion that the agreement was valid. Here, Citibank argues that that the agreement would be valid if South Dakota law applies. For South Dakota law to apply, the choice of law provision in the revised agreement must be given effect. But the choice of law provision is effective only if the revised agreement is valid. In essence, Citibank is asking that this court use a term from an agreement to determine its validity."

{¶ 31} Nevertheless, Citibank could no more enforce the terms of a cardholder agreement under South Dakota law without proper authentication and proof that it applied to and bound the cardholder than it could under Ohio law. Thus, in *Citibank (South Dakota), N.A. v. Mahmoud* (May 28, 2008), N.Y.City Civ.Ct., N.Y. Slip Op. No. 51091(U), 19 Misc.3d 1141(A), 866 N.Y.S.2d 90 (Table), 2008 WL 2279749, the court considered the South Dakota statute, S.D.C.L. Section 54–11–9, and held that Citibank could not enforce an attorney-fee provision in a generic credit-card agreement attached to its motion for summary judgment without an accompanying affidavit or other evidence establishing that the agreement was sent to and binding on the cardholder. The court explained:

{¶ 32} "Defendant is also disputing that the credit agreement submitted in support of plaintiff's motion [for summary judgment] applies to him. Defendant claims he has had a Citibank credit card for twenty years but that he never agreed to the terms and conditions which the plaintiff seeks to enforce against him. Plaintiff has submitted as an exhibit a credit card agreement alleging [that] it is the written agreement sent to the defendant *along with* the credit card which the defendant subsequently used for purchases, thereby triggering the applicability of the terms and conditions of that document, a practice allegedly sanctioned

by South Dakota law (SDCL § 54–11–9). Plaintiff also asserts that any and all subsequent changes were disclosed to defendant. However, there is no evidence from plaintiff showing proof of mailing copies of the agreement to the defendant. * * * There is no proof that the agreement provided was the *actual* agreement with defendant. It is simply an undated, unsigned form outlining general terms and conditions, [and] does not even link it as a document issued by the plaintiff, except for a '© 2006 Citibank (South Dakota), N.A.' entry on the bottom of the last page, which only supports the defendant's position. It does not contain defendant's signature or, if plaintiff is alleging a unilateral contract, an affidavit establishing defendant received notice (either actual or constructive) of the [underlying] agreement, including any subsequent amendments." (Emphasis sic.) Id. at *2.

{¶ 33} In this case, the cardholder agreements attached to appellee's motion for summary judgment as Exhibits F and G are merely unsigned, undated, and unauthenticated generic forms. Each exhibit bears a single entry on the last page that appears to indicate an issuance date after the occurrence of the first activity in appellant's accounts. There is no evidence as to whether these documents are supposed to be the original or revised agreements with appellant. There is no evidence that these agreements applied to appellant, had any relation to her accounts, or were ever mailed or otherwise sent to her. Contrary to appellee's assertions, these exhibits were not authenticated by Pam Cline's affidavits. Cline's affidavits do not aver that the card agreements were sent to appellant. In fact, Cline's affidavits do not even refer to or purport to authenticate any cardholder agreement. Instead, each affidavit is limited to identifying a single exhibit, which it describes as "a hard copy printout of the financial information, including the balance owing, residing on the Citibank (South Dakota), N.A. computer system as of the date the account(s) was (were) referred for collection to the attorney maintaining this lawsuit." In other words, the account statements. Indeed, the affidavits, which are dated seven months before suit was filed by Citibank, were originally attached to the complaint and accompanied only by several pages of account statements.

{¶ 34} Since there is no evidence that appellant was subject to the terms and conditions of the agreements submitted by appellee as Exhibits F and G, the partial-payment provisions in those documents cannot be enforced against appellant. Thus, based on the existing record, summary judgment was improperly granted in favor of appellee on the grounds that the partial-payment provisions precluded a valid accord and satisfaction. Accordingly, appellant's first two assignments of error are well taken.

{¶ 35} This does not end the matter, however, since a summary judgment granted on alternative grounds will be affirmed on appeal if either ground is

sufficient to support the decision. See *Rogers Indus. Prods., Inc. v. HF Rubber Mach., Inc.*, 188 Ohio App.3d 570, 2010-Ohio-3388, 936 N.E.2d 122, ¶ 21; *State Rd. Assoc. v. Cuyahoga Falls*, 9th Dist. No. 24362, 2009-Ohio-2859, 2009 WL 1682122, ¶ 9. The same is true under South Dakota law. *United Bldg. Ctr. v. Ochs*, 2010 S.D. 30, 781 N.W.2d 79, ¶ 10; *Dakota Plains AG Ctr., L.L.C. v. Smithey*, 2009 S.D. 78, 772 N.W.2d 170, ¶ 14; *Purdy v. Fleming*, 2002 S.D. 156, 655 N.W.2d 424, ¶ 11. We must therefore consider whether summary judgment was properly granted on the grounds that appellant failed to prove the existence of a bona fide dispute.

### III. Necessity of Dispute

{¶ 36} In her last four assignments of error, appellant asserts:

{¶ 37} "3. The Plaintiff–Appellee relies on ORC 1303.40 to support its claims however the Plaintiff does not provide evidence to support its claim under the provisions thereof and Plaintiff–Appellee was not entitled to summary judgment on the basis of ORC 1303.40.

{¶ 38} "4. The Plaintiff–Appellee was not entitled to Summary Judgment as Defendant–Appellant has proved that there was an accord and satisfaction.

{¶ 39} "5. The Plaintiff–Appellee was not entitled to Summary Judgment as the Plaintiff–Appellee had accepted a full and complete settlement from the Defendant–Appellant.

{¶ 40} "6. The Finding of Facts and Conclusion of Law of the Plaintiff and adopted by the trial court to support the Judgment are not supported by the evidence and therefore the decision of the trial court was against the weight of the evidence."

{¶ 41} The core question presented by these four assignments of error is whether the lack of an actual dispute over the existence or amount of the debt is necessarily preclusive of an enforceable accord and satisfaction in this case. As relevant here, appellant argues that she "was going to file bankruptcy and the offer is more than [appellee] would realize in bankruptcy." According to appellant, appellee chose to accept the conditions in each of her letters rather than "have a bankruptcy filed on the account." Appellee responds that there is no evidence of a dispute between the parties and that appellant is attempting "to manufacture a 'dispute' by claiming she 'might' have filed bankruptcy." Appellee also argues that it never accepted appellant's proposed settlement.

{¶ 42} "An accord is a contract between a debtor and a creditor in which the creditor's claim is settled in exchange for a sum of money other than that which is allegedly due. Satisfaction is the performance of that contract." *Allen v. R.G. Indus. Supply* (1993), 66 Ohio St.3d 229, 231, 611 N.E.2d 794. For

an accord and satisfaction to be established, it must be shown (1) that "the parties went through a process of offer and acceptance—an accord," (2) that the accord was "carried out—a satisfaction," and (3) that the agreement was "supported by consideration." Id. at 231–232.

{¶ 43} As to appellee's argument that it never accepted appellant's offer, the Ohio Supreme Court made clear in *Allen* that the first two requirements are satisfied "when the creditor manifests acceptance of the offer by negotiating a check sent by the debtor with the offer." Id. at 232. Moreover, contrary to the trial court's assertion, the lack of settlement discussions or other communications between the parties before appellant sent her letters does not preclude the occurrence of an accord and satisfaction. *Dawson v. Anderson* (1997), 121 Ohio App.3d 9, 14–15, 698 N.E.2d 1014. Thus, the only real question in this case is whether appellant's failure to show an actual dispute is fatal to her accord-and-satisfaction defense.

{¶ 44} The general rule is that an actual or bona fide dispute is an essential element of accord and satisfaction and, therefore, the acceptance of part payment tendered as full satisfaction of a liquidated or undisputed claim does not result in an accord and satisfaction. *Allen*, 66 Ohio St.3d at 232, 611 N.E.2d 794. See also R.C. 1303.40. The requirement for an actual dispute is perceived as a safeguard that protects unsophisticated creditors against overreaching debtors and ensures an adequate consideration for extinguishing the debt. Id. Otherwise, if there is no dispute, the debtor is giving up no more—and indeed, less—than what is already owed. In other words, a partial payment in the absence of an underlying dispute "is merely a thing which the party is already bound to do." *Rhoades v. Rhoades* (1974), 40 Ohio App.2d 559, 562, 69 O.O.2d 488, 321 N.E.2d 242.

{¶ 45} It has long been recognized, however, that partial payment in lieu of filing bankruptcy is sufficient consideration for an accord and satisfaction, despite the lack of a bona fide dispute over the existence or amount of the debt. The right of an insolvent debtor to file bankruptcy and seek a discharge of the debt is a thing of significant value, and its relinquishment is more than what the debtor was already bound to do. Thus, courts have generally held that the element of a bona fide dispute in accord-and-satisfaction cases is obviated when a creditor accepts a partial payment tendered in full satisfaction of the debt knowing that the debtor is insolvent and contemplating bankruptcy. See *Watson v. CitiCorp.* (Sept. 5, 2008), S.D.Ohio No. 2:07–cv–0777, 2008 WL 4186317, *6 ("Courts [in Ohio] have generally held that a debtor's forbearance from exercising her right to file bankruptcy is sufficient consideration for an accord and satisfaction when the forbearance is made in connection with her payment of part of the

debt"); *Internatl. Shoe Co. v. Stewart* (Tex.App.1922), 245 S.W. 723, 724 ("Where the debtor is known to the creditor to be insolvent, and the creditor in consideration of such fact agrees to and does accept part payment of a liquidated demand in full satisfaction, the courts generally recognize this as an exception to the general rule, and uphold the transaction as a good accord and satisfaction"); *San Antonio v. Guido Bros. Constr. Co.* (Tex.App.1970), 460 S.W.2d 155, 166 ("The acceptance of the cash consideration by plaintiffs at a time when the debtor * * * was insolvent, furnished adequate consideration supporting the Settlement Agreements. The same authorities dispose of the contention that there could be no accord and satisfaction when the amount of the debt is not in dispute, *especially when the cash paid was money borrowed from a third person*" [emphasis added]); *Bestor v. Am. Natl. Stores, Inc.* (Mo.App.1985), 691 S.W.2d 384, 389 ("In Missouri, however, no different than other states, a benefit or detriment different from that involved in the creation of the debt is sufficient consideration to support an accord and satisfaction discharging that debt. * * * American Stores' foregoing of their privileges and rights under the bankruptcy law is a detriment to it and, thus, additional consideration.")[1]

{¶ 46} This is not to suggest that credit-card customers can accomplish an accord and satisfaction simply by accompanying their partial payments with a letter feigning insolvency or prospective bankruptcy, any more than they can achieve such a result by alleging or fomenting an artificial dispute. (Nor does it preclude the enforceability of properly authenticated partial-payment provisions in cardholder agreements.) In this case, however, appellant's prospective bankruptcy attorney wrote appellee that partial payments were being offered in the interest of avoiding bankruptcy. The letters clearly stated that unless the offered amounts were accepted in full settlement of the accounts, appellee should

---

1. We have found no cases in which a court has held to the contrary or suggested that R.C. 1303.40 or UCC 3–311, which the statute adopts, has abrogated the common-law principle that forbearance from bankruptcy is sufficient consideration to support an accord and satisfaction. R.C. 1301.03 provides that unless displaced by particular provisions, R.C. Chapter 1303 shall be supplemented by "the principles of law and equity, including * * * the law relative to capacity to contract, principle and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause." In requiring a bona fide dispute, R.C. 1303.40 codified, not supplanted, the common law of accord and satisfaction. See Official Comment 3, UCC 3–311 (1990) ("Section 3–311 follows the common law rule with some minor variations to reflect modern business conditions"); 29 Williston on Contracts (2003) 136, Section 73.44 ("The Revised Uniform Commercial Code [3–311] codifies to a large extent these common law rules"). Moreover, the Official Comments make clear that if Section 3–311 is not applicable, other law will apply to determine whether an accord and satisfaction has been accomplished by a partial payment. See UCC 3–311, Comment 4 ("Other law applies to cases in which a debtor is seeking discharge of [an undisputed] debt by paying less than the amount owed"); UCC 1–207 (R.C. 1301.13), Comment 3 ("If Section 3–311 does not apply, the issue of whether an accord and satisfaction has been effected is determined by the law of contract").

return the checks and appellant "will pursue filing bankruptcy." The letters also state that appellant "has secured a loan from a family member to offer a full and complete settlement of this account for the [enclosed] sum," and it is clear that the accompanying checks were signed by and drawn on the account of a third party, i.e., appellant's mother, Sally Perz. In addition, appellant attested in her affidavit that she did, in fact, refrain from filing bankruptcy in reliance upon appellee's acceptance of her tendered offer. Under these circumstances, the lack of an actual dispute over the existence or amount of the debt is not dispositive of whether an accord and satisfaction occurred in this case, and the trial court erred in so holding.

{¶ 47} It is also worthy of note that South Dakota has by statute dispensed with the requirement of proving an actual dispute or any other new, additional, or different consideration to support a valid accord and satisfaction. S.D.C.L. Section 20–7–4. See also *Watson,* 2008 WL 4186317, *6 ("South Dakota * * * has by statute eliminated altogether from the elements of an accord and satisfaction the need for new consideration where the amount due is undisputed"). Under South Dakota law, the acceptance and cashing of a check for partial payment that is tendered in full settlement of an account constitutes an accord and satisfaction, even though there was no dispute over the existence or amount of the debt. *Eberle v. McKeown* (1968), 83 S.D. 345, 351, 159 N.W.2d 391; *Kirkeby v. A.B. Renaas* (1971), 85 S.D. 515, 520, 186 N.W.2d 513.

{¶ 48} Accordingly, appellant's last four assignments of error are well taken to the extent that summary judgment was improperly granted in favor of appellee on the issue of accord and satisfaction. We express no opinion as to the propriety of appellant's motion for summary judgment or the alternative grounds asserted by appellee in regard to appellant's counterclaim. Since the denial of summary judgment is not a final, appealable order, those issues remain to be determined by the trial court upon remand.

### IV. Conclusion

{¶ 49} The judgment of the Toledo Municipal Court is reversed, and the cause is remanded for further proceedings consistent with this decision. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed.

HANDWORK and PIETRYKOWSKI, JJ., concur.