[Cite as *Citibank, N.A. v. Gleisinger*, 2014-Ohio-3894.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| CITIBANK, N.A., | : | APPEAL NO. C-130766 |
| | | TRIAL NO. A-1208687 |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | *O P I N I O N.* |
| | | |
| JEANETTE GLEISINGER, | : | |
| | | |
| Defendant-Appellant. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: September 10, 2014

*Javitch Block & Rathbone* and *Megan Lindner*, for Plaintiff-Appellee,

*Katzman Logan Halper & Bennett* and *Kenneth B. Flacks*, for Defendant-Appellant.

Please note: this case has been removed from the accelerated calendar.

**FISCHER, Judge.**

{¶1} Defendant-appellant Jeanette Gleisinger appeals the trial court's entry granting summary judgment to plaintiff-appellee Citibank, N.A., on its complaint to recover the unpaid balance of $4,629.90 on a credit card account, and on Gleisinger's counterclaims for breach of contract, abuse of process, and defamation. Because no genuine issues of material fact exist with respect to Citibank's claim and Gleisinger's counterclaims, we affirm the trial court's judgment.

## *Facts*

{¶2} Citibank filed suit against Gleisinger in the Hamilton County Municipal Court, seeking to recover the $4,629.90 balance owed on the credit card account. Gleisinger filed an answer and counterclaims for breach of a settlement contract, violation of the Ohio Consumer Sales Practices Act, abuse of process, malicious prosecution, defamation, and violations of the Fair Credit Reporting Act. Because Gleisinger's counterclaims exceeded the jurisdiction of the municipal court, the case was transferred to the common pleas court.

{¶3} Citibank subsequently filed a motion for summary judgment on its complaint and all of Gleisinger's counterclaims. The motion was supported by the affidavit of Terri Ryning, a vice president of Citibank, Citibank's credit card agreement, and Gleisinger's account statements from January 21, 2004, to July 19, 2011. Gleisinger filed a motion in opposition with her own affidavit. In her affidavit, she asserted that she had had a telephone conversation with an account representative for Citibank, who had agreed to accept 12 $100 payments in full settlement of her credit card debt. She argued that her affidavit raised a factual issue in support of her defense of accord and satisfaction, as well as her counterclaims.

Citibank filed a reply. The trial court granted Citibank's motion for summary judgment on its claim and all of Gleisinger's counterclaims.

## Standard of Review

{¶4} We review a trial court's grant of summary judgment under Civ.R. 56 de novo. *Esber Beverage Co. v. LaBatt USA Operating Co., L.L.C.*, 138 Ohio St.3d 71, 2013-Ohio-4544, 3 N.E.3d 1173, ¶ 9. Under Civ.R. 56(C), summary judgment is proper when no genuine issues of material fact remain, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to but one conclusion, and with the evidence construed most strongly in favor of the nonmoving party, that conclusion is adverse to that party. *Id.*

## No Accord and Satisfaction

{¶5} In her first assignment of error, Gleisinger argues that the trial court erred in granting summary judgment on Citibank's action on an account because there was a genuine issue of material fact as to whether there was an accord and satisfaction. In her third assignment of error, she argues the trial court erred in granting summary judgment on her counterclaim for breach of contract. Both assignments of error are premised upon Gleisinger's argument that she had entered into an agreement with Citibank to settle her credit card account for 12 monthly payments of $100 with no interest. As a result, we address them together.

{¶6} "An accord is a contract between a debtor and a creditor in which the creditor's claim is settled in exchange for a sum of money other than that which is allegedly due. Satisfaction is the performance of that contract." *See Allen v. R.G. Indus. Supply*, 66 Ohio St.3d 229, 231, 611 N.E.2d 794 (1993). A debtor raising the defense of accord and satisfaction must show (1) that the parties went through a process of offer and acceptance—an accord; (2) that the accord was carried out—a

3

satisfaction, and (3) that the agreement was supported by consideration. *Id.* at 231-232.

{¶7} Where the amount of the claim is unliquidated or disputed, and an accord is reached whereby the creditor accepts payment of less than what it believes is owed, the consideration for the settlement lies in the mutual concessions of the parties. *Id.* at 232; *see Yin v. Amino Products Co.*, 141 Ohio St. 21, 46 N.E.2d 610 (1943). Alternatively, if the claim is liquidated and undisputed, some additional consideration will be required to establish an accord and satisfaction. *See Complete Credit Solutions v. Kellum*, 1st Dist. Hamilton No. C-130216, 2013-Ohio-5324, ¶ 13.

{¶8} Once an accord and satisfaction has been established, the substituted agreement is treated the same as any other contract. *Cincinnati ex rel. Ritter v. Cincinnati Reds L.L.C.*, 150 Ohio App.3d 728, 2002-Ohio-7078, 782 N.E.2d 1225, ¶ 43-47 (1st Dist.). Thus, a debtor may be entitled to bring a separate action for breach of the settlement agreement. *See Drive-N-Shoppe, Inc. v. Pavlik*, 33 Ohio App.3d 149, 151, 514 N.E.2d 917 (11th Dist.1986).

{¶9} Here, Gleisinger offered her own affidavit in support of her defense of accord and satisfaction. She stated in relevant part as follows:

> I spoke with two different people on March 2, 2010. I recall that
> the first time I was told the computers were down and [I] needed
> to call back. I am not 100% sure, but there was a reason like that
> and I wrote down the name "Tara." I called back on the same day
> and spoke with Bethany or at least that was the name she gave me.
> I said I could not pay $1,104.35 all at once and I was offered an
> installment plan of $100 per month for 12 months for a total of
> $1,200.00. I was told if I made all of my payments on time that

4

my balance would be zero. If I was late or missed a payment, I would owe the entire amount. I agreed to the installment plan that was more than the $1,104.35. The zero balance was very important to me and I did not want to lose out on this because of a late payment being delivered in the mail. So, I told the person my PNC checking account number to immediately start the first $100.00 payment and authorized the automatic payment of $100.00 per month from my PNC checking account for the remaining 11 payments.

{¶10} Glesinger also relies on a letter from Citibank offering to reach a settlement with her by telephone. Gleisinger argues that her affidavit and the letter are sufficient to raise a genuine issue of material fact as to whether she had entered into an accord and satisfaction with Citibank. We disagree. Gleisinger's debt was not disputed on March 2, 2010, when she contacted Citibank to discuss the payment options for her account. Because there was no actual dispute regarding the amount that Gleisinger originally owed to Citibank on the account, as a matter of law additional consideration was required to support the alleged settlement agreement Gleisinger claimed to have reached with Citibank's representative. *See Citibank (South Dakota) N. Am. v. Perez*, 191 Ohio App.3d 575, 2010-Ohio-5890, 947 N.E.2d 191 (6th Dist.) (holding that a debtor's partial payment in lieu of filing bankruptcy is sufficient consideration for an accord and satisfaction); *see also Reid v. Wallaby's Inc.*, 2d Dist. Greene No. 2011-CA-1437, 2012-Ohio-1437, ¶ 42-52; *Rhoades v. Rhoades*, 40 Ohio App.2d 559, 562, 321 N.E.2d 242, 245 (1st Dist.1974) ("neither the promise to do a thing, nor the actual doing of it will constitute a sufficient consideration to support a contract if it is merely a thing which the party is already bound to do.").

5

**{¶11}** Gleisinger, however, has pointed to no consideration for the alleged settlement. As a result, the trial court properly concluded that Gleisinger's affidavit had failed to establish that an accord and satisfaction existed between her and Citibank, and that Citibank, therefore, was entitled to judgment on her counterclaim for breach of contract. The first and third assignments of error are overruled.

### Citibank's Action on an Account

**{¶12}** In her second assignments of error, Gleisinger argues that the trial court erred in granting summary judgment to Citibank on its complaint to recover on the credit card account. She argues that Citibank failed to meet its evidentiary burden to show its right to recover on the credit card account.

**{¶13}** To establish a prima facie case for money owed on an account, a plaintiff must show an account in the name of the party charged which contains:

(1) a beginning balance of zero, or a sum that can qualify as an account stated, or some other provable sum; (2) listed items, or an item, dated and identifiable by number or otherwise, representing charges, or debits, and credits; and (3) summarization by means of a running or developing balance, or an arrangement of beginning balance and items that permits the calculation of the amount claimed to be due.

*Great Seneca Fin. v. Felty*, 170 Ohio App.3d 737, 2006-Ohio-6618, 869 N.E.2d 30, ¶ 6 (1st Dist.).

**{¶14}** Gleisinger argues, without citation to any legal authority, that Citibank's affidavit and supporting documentation fail to establish its right to recover the outstanding balance on her credit card account. She maintains that Citibank has attached a generic affidavit, which relies on the wrong cardholder agreement, incomprehensible collection history notes, and a form letter. We disagree.

{¶15} The cardholder agreement attached to Citibank's motion for summary judgment is dated March 2010, and was in effect at the time that Gleisinger's account was closed. It provides for late fees and interest. Additionally, the billing statements set forth the late fees and interest, and itemized every charge and credit on the account from a zero balance to the charge-off date. *See Citibank (South Dakota) N.A. v. Ogunduyile*, 2d Dist. Montgomery No. 21794, 2007-Ohio-5166, ¶ 12 (holding that the affidavit of a bank representative which authenticated copies of monthly account statements submitted in support of a motion for summary judgment were sufficient to establish a prima facie case for money owed on an account).

{¶16} Gleisinger's billing statements provide the necessary information to prove the account. The statements were addressed to Gleisinger at her home address and included the last four digits of her account number. The billing statement dated January 2004, begins with a zero balance, and the subsequent statements through July 19, 2011, itemize every charge and credit on the account before it was charged off. At the time of Gleisinger's final payment on the account, which was dated February 2011, a balance of $3,954.52 remained. In July 2011, Citibank charged off the account with a remaining balance of $4,629.90. Rhyning authenticated the cardholder agreement and billing statements. She verified that, according to Citibank's records, Gleisinger had defaulted on the account by failing to make the required payments, leaving a balance due in the amount of $4629.90.

{¶17} Accordingly, Citibank met its burden to prove that there was no genuine issue of material fact as to Gleisinger's liability for the $4,629.90 balance due and owing to Citibank. As a result, the trial court properly granted summary judgment to Citibank on its claim to recover on Gleisinger's credit card account. *See Wolf Automotive v. Rally Auto Parts, Inc.*, 96 Ohio App.3d 130, 137, 641 N.E.2d 1195

7

(10th Dist.1991); *Citibank, N.A. (South Dakota) v. Hyslop*, 10th Dist. Franklin No. 12AP-885, 2014-Ohio-844, ¶ 17. The second assignment of error is overruled.

### Counterclaims for Abuse of Process and Defamation

{¶18} In her fourth assignment of error, Gleisinger argues that the trial court erred in granting Citibank's motion for summary judgment on her counterclaims for abuse of process and defamation when there were genuine issues of material fact for trial.

{¶19} The elements of abuse of process are: "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed, and (3) that direct damage has resulted from the wrongful use of process." *Yaklevich v. Kemp Schaeffer & Rowe Co., L.P.A.*, 68 Ohio St.3d 294, 626 N.E.2d 115 (1994), paragraph one of the syllabus.

{¶20} Gleisinger alleged that Citibank had recklessly, wrongfully, and intentionally attempted to collect a debt that was not owed to it and had instituted the current lawsuit against her. Here, Gleisinger has offered no evidence in support of her abuse-of-process claim. Citibank has produced numerous records reflecting Gleisinger's failure to pay the balance due and owing on her account. Gleisinger has not produced any evidence outside of her own statements in her affidavit that Citibank lacked probable cause to initiate the current action against her. Nor has she set forth any evidence that Citibank had an ulterior purpose in initiating the proceedings or that she has been damaged in any way. As a result, Citibank was entitled to judgment in its favor, and the trial court properly entered summary judgment on Gleisinger's counterclaim for abuse of process.

{¶21} Gleisinger also argues the trial court erred in granting summary judgment on her defamation claim. Gleisinger's defamation claim rested exclusively on Citibank's reporting of the status of her credit card account to the credit reporting agencies. Citibank argues that Gleisinger's defamation claim is preempted by the Fair Credit Reporting Act, and further, if not preempted, Gleisinger has failed to present any evidence to support her defamation claim.

{¶22} To establish a claim for defamation, Gleisinger had to prove the following elements: "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Harris v. Bornhorst*, 513 F.3d 503, 522 (6th Cir.2008), quoting *Akron-Canton Waste Oil v. Safety-Kleen Oil Servs.*, 81 Ohio App.3d 591, 611 N.E.2d 955 (9th Dist.1992).

{¶23} Under 15 U.S.C. 1681h(e) of the Fair Credit Reporting Act, any action or proceeding "in the nature of defamation, invasion of privacy, or negligence" is preempted [by the Act] unless the "false information [was] furnished with malice or with intent to injure the consumer." Although 15 U.S.C. 1681h(e) does not define malice, federal courts have held that information is "furnished with malice" if "the furnisher 'either knows [the information] is false or * * * the [furnisher] acts in reckless disregard of its truth or falsity.' " *Saint Torrance v. Firstar*, 529 F.Supp.2d 836, 844 (S.D.Ohio 2007), quoting *Wolfe v. MBNA Am. Bank*, 485 F.Supp.2d 874, 888 (W.D.Tenn. 2007).

{¶24} While Gleisinger alleged in her complaint that Citibank made false statements to the credit reporting agencies "maliciously, without privilege and with a willful intent to injure [her]," she has failed to set forth any evidence to support her assertions that Citibank reported the information maliciously, without privilege, and

with a willful intent to injure her. Based upon Citibank's records, Gleisinger owes the outstanding balance on her account. As a result, the trial court properly entered summary judgment on her counterclaim for defamation. We, therefore, overrule Gleisinger's fourth assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**CUNNINGHAM, P.J,** and **HENDON, J.,** concur.

Please note:

The court has recorded its own entry this date.

10