[Cite as *Univ. of Findlay v. Martin*, 2017-Ohio-7016.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

UNIVERSITY OF FINDLAY,

      PLAINTIFF-APPELLEE,

v.

BRAD MARTIN, ET AL.,

      DEFENDANTS-APPELLANTS.

CASE NO. 5-17-02

**O P I N I O N**

Appeal from Hancock County Common Pleas Court
Trial Court No. 2015-CV-00169

Judgment Affirmed in Part, Reversed in Part
Cause Remanded

Date of Decision:

APPEARANCES:

    *Matthew T. Davis and Timothy C. James* **for Appellants**

    *Michael W. Regnier and Adam S. Nightingale* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Defendants-appellants Brad Martin ("Martin"), USA Lawns, Inc. ("USA"), and Pat McKinnis ("McKinnis"), collectively known as "the Appellants", bring this appeal from the judgment of the Court of Common Pleas of Hancock County denying summary judgment to the Appellants, determining that plaintiff-appellee the University of Findlay ("the University") had standing to pursue the claim, and for denying the Appellants' motion to dismiss at trial. For the reasons set forth below, the judgment is affirmed in part and reversed in part.

{¶2} On December 10, 2013, the University contracted with USA to perform lawn and landscape work on property owned by the University. Martin was the president of USA at that time. The contract included the application of a weed control herbicide to the lawns. On April 28, 2014, McKinnis was employed by USA and applied the incorrect solution to the University's lawns. Soon afterwards the grass, as well as the weeds in the lawn, began to die. On June 16, 2014, the University and USA entered into a Covenant Not to Execute Judgment in Excess of Insurance Proceeds ("Covenant"). The Covenant provided that USA acknowledged the damage to the lawns, its responsibility for the damage, and that the University would bring suit to recover the damages. In exchange, USA would pay damages in the amount of $250,000.00 divided between cash payments and labor. The cash payments were made and the labor was provided as agreed.

{¶3} On May 4, 2015, the University filed its complaint alleging the Appellants were liable for general negligence, negligent supervision, and a failure to carry insurance as required by Ohio law. Doc. 1. The Appellants filed their answer to the University's complaint on May 26, 2015, with an amended answer being filed on September 3, 2015. Doc. 19 and 29. On November 25, 2015, the Appellants filed a motion for summary judgment. Doc. 39. The University filed its response to the motion and its own motion for partial summary judgment on May 27, 2016. Doc. 73 and 74. On September 20, 2016, the trial court denied the Appellants' motion for summary judgment and granted the University's motion for partial summary judgment. Doc. 81. A bench trial on the remaining issues was held on December 1, 2016. On December 28, 2016, the trial court entered its final ruling on the matter granting judgment in favor of the University on all claims. Doc. 93. The Appellants filed a timely notice of appeal. Doc. 97. The Appellants raise the following assignments of error on appeal.

**First Assignment of Error**

**The trial court erred when it denied [the Appellants'] motion for summary judgment regarding mootness of [the University's] claims and that the parties had entered into an accord and satisfaction of [the University's] claims.**

**Second Assignment of Error**

**The trial court erred in determining [the University] had standing to pursue a claim for [the Appellants'] alleged failure to carry required insurance coverage.**

**Third Assignment of Error**

**The trial court erred when it denied [the Appellants'] Civil Rule 41(B) motion to dismiss at trial.**

*Summary Judgment*

{¶4} In the first assignment of error, the Appellants claim that the trial court erred in denying its motion for summary judgment.

> **An appellate court reviews a trial court's summary judgment decision de novo, independently and without deference to the trial court's decision.** *Ohio Govt. Risk Mgt. Plan v. Harrison*, **115 Ohio St.3d 241, 2007-Ohio-4948, 874 N.E.2d 1155, at ¶ 5, citing** *Comer v. Risko*, **106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, at ¶ 8. Summary judgment is appropriate only "when the requirements of Civ.R. 56(C) are met."** *Adkins v. Chief Supermarket*, **3d Dist. No. 11-06-07, 2007-Ohio-772, at ¶ 7. The party moving for summary judgment must establish: (1) that there are no genuine issues of material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Id., citing Civ.R. 56(C);** *Horton v. Harwick Chem. Corp.* **(1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, at paragraph three of the syllabus. In ruling on a motion for summary judgment, a court may not "weigh evidence or choose among reasonable inferences * * *."** *Id.*, **at ¶ 8, 653 N.E.2d 1196, citing** *Jacobs v. Racevskis* **(1995), 105 Ohio App.3d 1, 7, 663 N.E.2d 653. Rather, the court must consider the above standard while construing all evidence in favor of the non-movant.** *Jacobs*, **at 7, 663 N.E.2d 653.**

> **The party moving for summary judgment must identify the basis of the motion to allow the non-movant a "meaningful opportunity to respond."** *Mitseff v. Wheeler* **(1988), 38 Ohio St.3d 112, 116, 526 N.E.2d 798. In its motion, the moving party "must state specifically which areas of the opponent's claim raise no genuine issue of material fact and such assertion may be supported by affidavits or otherwise as allowed by Civ.R. 56(C)."** *Id*. **at 115,**

> **526 N.E.2d 798, citing *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46, citing *Hamlin v. McAlpin Co.* (1964), 175 Ohio St. 517, 519-520, 196 N.E.2d 781; *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. If the moving party fails to meet its burden, summary judgment is inappropriate; however, if the moving party meets its initial burden, the non-moving party has a "reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial * * *." *Dresher,* at 294, 662 N.E.2d 264.**

*Lillie v. Meachem*, 3d Dist. Allen No. 1-09-09, 2009-Ohio-4934, ¶ 21-22.

{¶5} In this case, the Appellants claim that the trial court should have granted their motion for summary judgment. The motion argued that since the parties had entered the Covenant, the University can receive no award from the trial court. The Appellants argued that "[e]ven assuming the University succeed[ed] on all accounts and [was awarded a verdict] in this matter, the University has received the full spectrum of relief it can receive from [the Appellants]." Doc. 39 at 7. The Appellants also argue that the Covenant acted as an accord and satisfaction of the claims. *Id.* at 10. The Covenant indicated that the University knew that the claim had been submitted to Celina Mutual Insurance Company ("CMIC"), but that the claim had been denied by the insurance company. Doc. 39, Ex.A at 1. The Covenant then stated in pertinent part as follows.

> **2. USA agrees to pay for and to perform the following services:**
>
> a. USA possesses and has provided to the University, a report secured by [CMIC] from LWG Consulting ("the Report") alleging that the cost of replacing the turf in Phase I and II was $342,534.99 and alleging that $249,164.85 was a reasonable amount to restore Phase I and II if 80% of Phase II is replaced

**with seed, rather than sod. For purposes of this Covenant, the University and USA do not agree with or disagree with the Report and the amount paid under this Covenant is not dependent upon the amount stated in the Report.**

**b. USA will provide labor and money equal to $250,000.00 to cover fees and expenses other than those fees and expenses set forth in the Report. The $250,000.00 from USA to the University represents value to the University above and beyond the work and material set forth in the Report.**

**c. Specifically, USA has already paid $68,845.00 to Maumee Bay on behalf of the University.**

**d. Additionally, within 30 days of the Agreement, USA will provide $130,155.00 to the University.**

**e. Further, as labor to represent cash value of $51,000, USA will provide services to the University, which the University requests and accepts as:**

**(1) All of the labor associated with the removal of the old sod from the Phase 2 area and**

**(2) Double aerify seeding of the Phase 3 area along with some slit seeding of the Phase 3 area, as agreed separately between the University and USA. The labor and materials in Phase 3 being provided by USA, with approval of the materials' identities being reserved by the University.**

**\* \* \***

**4. the parties understand and agree that the University will file suit against USA. Nothing in this Covenant should be construed as a release by the University of USA from any claims it has for damage caused by USA to the University grounds. If and when the University files suit against USA, it is understood that, if the University's claim against USA is insured, USA will cooperate with its insurer in the defense of the University's action.**

**5.    However, the University agrees to prepare, execute, and publicly disseminate a joint public statement agreed to in advance by the University and USA, which statement will affirm the University's gratitude and agreement for USA's good faith cooperation, responsiveness, labor, and payment(s) as described in this Covenant.  Said joint statement will specifically explain that the purpose of the litigation against USA is to position the University to directly seek insurance proceeds from USA's insurance carrier(s).**

**6.    If the University obtains a judgment against USA, the University agrees that it will not execute upon, or seek to enforce, the judgment against USA but will instead limit its recovery and collection efforts to any insurance proceeds that may be or are available to satisfy the judgment.  This provision does not limit the University's right to bring a direct action against any insurer who insured USA against loss from the University's claims, and the parties understand and agree that the University maintains the right to bring said direct action.**

**\* \* \***

**9.  If USA's insurers, including but not limited to CMIC refuse to defend and/or indemnify USA from the University's claims, USA assigns to the University any and all claims for bad faith USA has against said insurers.  USA will participate and cooperate in the prosecution of said claims to the extent necessary to maintain said claims.**

*Id*. at 1-3.  A clear reading of the Covenant indicates that the Appellants were fully aware that the University would be bringing suit in order to recover any additional damages from the insurance company.  At oral argument, the Appellants admitted that the only way to bring a claim against the insurance company is to sue the tortfeasor.  This suit was fully anticipated and was agreed upon by the parties in the

Covenant. Thus, based upon the undisputed evidence, the University's suit was not moot and was, in fact, required to recover additional damages.

{¶6} The Appellants also claim that the suit is barred because there was an accord and satisfaction. "For an accord and satisfaction to be established, it must be shown (1) that 'the parties went through a process of offer and acceptance—an accord,' (2) that the accord was 'carried out—a satisfaction,' and (3) that the agreement was 'supported by consideration.'" *Citibank (South Dakota), N.A. v. Perz*, 191 Ohio App.3d 575, 2010-Ohio-5890, 947 N.E.2d 191, ¶ 42 (6th Dist.) quoting *Allen v. R.G. Indus. Supply*, 66 Ohio St.3d. 229, 231–232, 1993-Ohio-43, 611 N.E.2d 794. As discussed above, part of the agreement was that the University would bring suit against the Appellants in order to access insurance coverage. Since the agreement included the lawsuit, the Appellants cannot claim that the suit violates the agreement. The trial court did not err in denying the Appellants' motion for summary judgment. The first assignment of error is overruled.

*Standing to Bring Suit Under R.C. 921.25(B)*

{¶7} In the second assignment of error, the Appellants claim that the University lacked standing to bring a claim under R.C. 921.25(B). The University claims that it has standing due to a right inferred from a reading of R.C. 921.25(B) and Ohio Administrative Code 901:5-11-07. "The question of the existence of a statutory cause of action is, of course, one of statutory construction." *Touche Ross & Co. v. Redington,* 442 U.S. 560, 568, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). In

*Cort v. Ash*, the U.S. Supreme Court set forth relevant factors to be considered in determining whether there is a private cause of action. *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). These factors included whether 1) the plaintiff is part of the class intended to benefit from the statute; 2) is there a legislative intent to create a private cause of action; and 3) is implying a private cause of action consistent with the purpose of the statute. *Id*. at 78. This opinion was partially overruled by *Touche Ross* when the U.S. Supreme Court held that these factors were not all of equal weight. *Touche Ross supra* at 575. "The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action." *Id*.

{¶8} Ohio Revised Code Chapter 921 sets forth the rules regarding pesticide use. It requires that all pesticide application businesses be licensed by the director of agriculture. R.C. 921.09. Additionally, the chapter requires all pesticide business licenses only be issued after the business has provided evidence of liability insurance. R.C. 921.10. If a requirement of the chapter is believed to have been violated, the director of agriculture has the authority to conduct a hearing to determine whether a violation has occurred. R.C. 921.25(A)(1).

> **(1) In lieu of conducting a hearing under division (A) of this section, the director may refer the violation to the attorney general who, except as otherwise provided in division (B)(2) of this section, may bring a civil action against any employer of a person who violates this chapter or any rule or order adopted or issued under it. If the court determines that a violation has occurred, the court shall order the person to pay a civil penalty for each**

> **violation, not to exceed five thousand dollars for a first violation and not to exceed ten thousand dollars for each subsequent violation. Each day a violation continues constitutes a separate and distinct violation.**
>
> **(2) The civil action authorized under division (B)(1) of this section may be brought against the employer of a person who violates this chapter or any rule adopted or order issued under it rather than against the person.**
>
> **Divisions (B)(1) and (2) of this section do not affect, and shall not be construed as affecting any other civil or criminal liability of the employee or employer that may arise in consequence of the employer's or employee's violation of this chapter or any other law.**

R.C. 921.25(B). A clear reading of the statute provides that the civil action for a violation of Chapter 921 is to be brought by the attorney general. A party that is injured as a consequence of a violation is free to bring a suit for the consequence, not for the violation itself.

{¶9} The Administrative Code requires all pesticide businesses to have both a general liability insurance policy and specific insurance for the application of pesticides, including for the damage from the application of the pesticide. Ohio Adm. Code 901:5-11-07(B). The code also requires that each business applying for a license must submit either a certificate of insurance or a binder verifying the coverage. Ohio Adm. Code 901:5-11-07(E). Neither the statute nor the administrative code provisions imply a legislative intent to create a private civil remedy for failing to have insurance. The University was able to receive a judgment for the admitted negligent application of the pesticide. To infer a private right to

bring a suit, as argued by the University in this case, is illogical. The statute specifically provides that the attorney general is the person who may bring the suit for a violation of the statute. The statute further states that other civil liability of the employee or employer that may arise in consequence of the employee's or employer's violation of this chapter is not affected. Thus, injured parties are free to bring a civil suit for the damages suffered as a consequence of any violation. It does not provide for the injured parties to bring a civil suit for the violation itself. To allow the injured party to bring suit because, as alleged in this case, the pesticide business did not have insurance as required by statute is illogical. The injured party was not injured because of the lack of insurance, but because of the actions of the pesticide business. The injured party thus can sue for the actions of the pesticide business and recover under that cause of action, which was done in this case. There was no showing that the legislature intended for injured parties to be able to sue to recover pursuant to R.C. 921.25. Thus there was no right of private action inferred by the statute and the trial court erred in finding that the University had standing to bring this claim. The second assignment of error is sustained.

*Motion to Dismiss*

{¶10} In the third assignment of error, the Appellants argue that the trial court erred in not granting the Civil Rule 41(B)(2) motion to dismiss.

> **After the plaintiff, in an action tried by the court without a jury, has completed the presentation of the plaintiff's evidence, the defendant, without waiving the right to offer evidence in the event**

> **the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as a trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.**

Civ.R. 41(B)(2). The trial court is allowed to consider both the law and the facts and does not view the evidence in a light most favorable to the plaintiff. *Phillimore v. Butterbaugh*, 5th Dist. Richland No. 14CA32, 2014-Ohio-4641, ¶ 24.

> **Even if the plaintiff has presented a prima facie case, dismissal is still appropriate where the trial court determines that the necessary quantum of proof makes it clear that plaintiff will not prevail. * * * Where the plaintiff's evidence is insufficient to sustain plaintiff's burden in the matter, the trial court may dismiss the case. * * * However, if the judge finds the plaintiff has proven the relevant facts by the necessary quantum of proof, the motion must be denied and the defendant is required to put on evidence.**

*Id*. (citations omitted). Judgments supported by some competent, credible evidence will not be reversed on appeal as being against the manifest weight of the evidence. *Id*. at ¶ 25.

{¶11} The University in this case was suing the Appellants for the negligent application of pesticide to its lawns. The fact that the Appellants had negligently applied the wrong product to the lawn was not disputed. The sole issue for the trial court to determine was the amount of damages. The Appellants presented two reasons to the trial court as to why the motion to dismiss should have been granted. First, the Appellants argued that the University had already received all the damages it was entitled to collect from them pursuant to the Covenant. This argument was

-12-

discussed above in the first assignment of error and found to be without merit. Second, the Appellants argued that the University had not addressed the reasonableness of the damages. Rather than rule on this issue at that time, the trial court chose to take the matter under advisement and hear the rest of the testimony. The Civil Rule specifically provides that the trial court has the option of hearing the defense's case-in-chief prior to rendering a verdict. Civ.R. 41(B)(2). Thus, the trial court did not violate the rule by choosing to wait.

{¶12} Additionally, the University presented the testimony of Martin at trial. Martin admitted that the only way to have grass in the public areas within two months was for the University to remove the dead grass and add sod. Tr. 18-22. The University presented evidence as to what was paid to repair the damages. Ex. 1. That exhibit showed that the total paid by both the University and USA cost $443,922.00. Tr. 27, Ex. 1. Given that Martin admitted that the only way to have grass within two months was to replace the sod in the lawn, there was competent, credible evidence presented from which a trial court could determine that the University had set forth sufficient facts to satisfy its burden of proof and to require the Appellants to put forth evidence. Thus, the trial court did not err in declining to grant the motion to dismiss at the end of the University's case-in-chief. The third assignment of error is overruled.

{¶13} Having found no error in the particulars assigned and argued in the first and third assignments of error, the judgment as to those issues is affirmed.

Case No. 5-17-02

Having found error in the particulars assigned and argued in the second assignment of error, the judgment as to the standing of Appellee to challenge the lack of insurance under R.C. 921.25(B) is reversed and remanded.

*Judgment Affirmed in Part*
*Reversed in Part*
*Cause Remanded*

**ZIMMERMAN and SHAW, J.J., concur.**

**/hls**

-14-