[Cite as *Johnson v. Stone*, 2019-Ohio-318.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

JERRY M. JOHNSON,

    PLAINTIFF-APPELLEE,              CASE NO. 1-18-40

    v.

R. JEFFREY STONE, ET AL.,           O P I N I O N

    DEFENDANTS-APPELLANTS.


**Appeal from Allen County Common Pleas Court**
**Trial Court No. CV 2017 0187**

**Judgment Affirmed**

**Date of Decision:   February 4, 2019**


**APPEARANCES:**

    *Steven L. Diller and Adam J. Motycka* **for Appellants**

    *J. Alan Smith and Steven A. Keslar* **for Appellee**

Case No. 1-18-40

**SHAW, J.**

{¶1} Defendants-counterclaimants-appellants, R. Jeffery Stone ("Stone"), his wife Mary Jo Stone, R.J. Stone Development Group Inc., and M.J. Properties (all collectively, "appellants"), bring this appeal from the July 6, 2018, judgment of the Allen County Common Pleas Court denying their counterclaim against plaintiff-counterclaim defendant-appellee, Jerry M. Johnson ("Johnson").[1] On appeal, appellants argue that the trial court erred by finding that they failed to prove, in a bench trial, that an enforceable settlement agreement or novation had been reached between the parties.

*Relevant Facts and Procedural History*

{¶2} Johnson and the appellants were involved in a financing relationship related to the development of real property ("the property") located in Allen County. In 2005, appellants executed a promissory note in favor of Johnson in the amount of $423,000. It appears from the record that the promissory note was in exchange for the property itself, which had been owned by Johnson's wife. As inducement to Johnson in making the note, Stone executed and delivered a guaranty, and the promissory note and the guaranty were secured by an open-end mortgage from R.J. Stone Development Group and M.J. Properties on the property.[2]

---

[1] The business entity, R.J. Stone Development Group, Inc., was a corporation owned by Stone, and M.J. Properties was a partnership owned by Stone and his wife.
[2] Stone intended to pay down the note as lots were sold from the property. He also intended to make money as the sole developer for the project.

-2-

{¶3} Appellants attempted to get a loan to develop the property from Union Bank, but they were notified that Johnson was required as an accommodation party to guarantee 50% of the loan. Johnson did become an accommodation party. In exchange for the loan, Union Bank received a mortgage on the property, superior to Johnson's mortgage. However, appellants eventually defaulted on the loan, and Johnson paid $297,156.11 for his portion of the guarantee on the loan.

{¶4} In 2015, Union Bank was granted cognovit judgments against R.J. Stone Development Group, and Stone reached an agreement with Union Bank that in lieu of foreclosure, Stone would deed the property to Union Bank. In order to do so, the property had to be free and clear of Johnson's mortgage. Stone requested that Johnson release his mortgage on the property, and the parties attempted to enter into a loan modification agreement to substitute collateral on the remaining balance of the note.

{¶5} There were numerous discussions between the parties attempting to modify their agreement regarding the outstanding money owed to Johnson, but ultimately on March 27, 2017, Johnson filed a complaint seeking the $297,156.11 he had paid as an accommodation party on appellants' behalf, and the amount due on the $423,000.00 promissory note, which was $366,500.

{¶6} Appellants filed an answer, which also asserted a counterclaim alleging that the parties had actually reached a settlement agreement, or a novation,

modifying their loan agreement, which should have been enforced by the trial court. Although there was no definitive written novation signed by both parties, appellants contended that through the parties' attorneys' email correspondence, and a written proposed loan modification agreement that had been signed by Johnson, it could be shown that a novation had been reached.

{¶7} The case proceeded to summary judgment proceedings, with the trial court concluding that the evidence was not in dispute that Johnson had made payments on appellants' behalf pursuant to the guarantee on the loan from Union Bank in the amount of $297,156.11, and that the appellants owed Johnson $366,500.00 on the promissory note. The trial court thus awarded summary judgment to Johnson on his claims. Appellants did not appeal the trial court's decision on those issues.

{¶8} However, the trial court found that a genuine issue of material fact existed as to appellants' counterclaim that the parties had reached a settlement agreement or a novation. The parties proceeded to a bench trial on this lone remaining issue, submitting to the trial court the depositions of Stone, Stone's wife, and Johnson, as well as joint exhibits containing, *inter alia*, email correspondence between the parties' attorneys detailing their attempts to settle the matter. Stone's attorney was also questioned at the trial about the purported settlement agreement, though he was the only witness called on the actual day of trial.

{¶9} On July 6, 2018, the trial court filed an entry denying appellants' counterclaim. The trial court cited applicable controlling legal authority and then emphasized that discussions between the parties and their attorneys were ongoing throughout the first half of 2016 regarding Johnson's desire for substitute collateral to secure the promissory note. One of the pieces of collateral discussed was a security interest in Stone's one-half equity interest in a company called Bay Point Properties, LLC.[3]

{¶10} A security interest in Stone's entire equity interest in Bay Point was listed as potential collateral in written versions of proposed loan modification agreements between the parties as they worked to come to an agreement; however, Stone indicated in his deposition and through his attorney that he rejected Bay Point as potential collateral as stated, and that in any event Stone's partner in Bay Point would not agree to it either. (Stone's Depo. at 86). Stone's partner would not permit a mortgage to be executed on Bay Point.

{¶11} The trial court analyzed the evidence and filed a written decision concluding that appellants, "failed to prove, by even a preponderance of the evidence, that there was a meeting of the minds * * * and that no enforceable settlement agreement or novation was reached." (Doc. No. 89). Appellants now

---

[3] Stone had a number of business and real estate interests.

bring this appeal from the trial court's decision, asserting the following assignment

of error for our review.

**Assignment of Error**
**The trial court erred when it granted judgment in favor of Appellee, ruling that Appellants failed to prove that a meeting of the minds occurred with respect to the "Modification and Change Agreement" and that no enforceable settlement agreement or novation was reached.**

**{¶12}** In their assignment of error, appellants argue that the trial court erred

by determining that appellants failed to prove that there was an enforceable

settlement agreement or that a novation was reached.  Appellants essentially argue

that the trial court's determination was against the manifest weight of the evidence.

Standard of Review

**{¶13}** In *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, the

Supreme Court of Ohio clarified the standard of review in civil cases regarding

manifest weight of the evidence.  When reviewing a civil matter under the manifest

weight of the evidence,

> **" ' "[t]he [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." ' "**

*Eastley* at ¶ 20, quoting *Tewarson v. Simon,* 141 Ohio App.3d 103, 115, 750 N.E.2d

176 (9th Dist.2001), quoting *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997-

Ohio-52, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶14} Moreover, when weighing the evidence, "the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21. More specifically, " 'every reasonable intendment and every reasonable presumption must be made in favor of the judgment[.]' " *Id.* quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191-192 (1978). " 'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment[.]' " *Id.*

Analysis

{¶15} Appellants argue that a contract of novation was created in this case, and that the trial court thus erred in finding that there was no "meeting of the minds" in this matter.

{¶16} The Supreme Court of Ohio has addressed what constitutes a novation.

**"A contract of novation is created where a previous valid obligation is extinguished by a new valid contract, accomplished by substitution of parties or of the undertaking, with the consent of all the parties, and based on valid consideration." *McGlothin v. Huffman,* 94 Ohio App.3d 240, 244, 640 N.E.2d 598 (12th Dist.1994). A novation can never be presumed but must be evinced by a clear and definite intent on the part of all the parties to the original contract to completely negate the original contract**

> **and enter into the second.** *King Thompson, Holzer–Wollam, Inc.*
> ***v. Anderson,* 10th Dist. No. 93APE08–1155, 1994 WL 14791, \*2**
> **(Jan. 20, 1994).**
>
> **Because a novation is a new contract, it too must meet all the**
> **elements of a contract.**

*Williams v. Ormsby*, 131 Ohio St.3d 427, 2012-Ohio-690, ¶¶ 18-19.

{¶17} In this case, the parties' attorneys exchanged numerous emails from March of 2016 to June of 2016 in an attempt to reach a loan modification agreement to substitute collateral for the promissory note. Appellants argue that a sufficiently definite novation was reached on May 9, 2016 and that only at this point did Johnson interject a new and additional contract term regarding Bay Point Properties.

{¶18} In support of their argument, appellants point to an email sent by Johnson's attorney on May 9, 2016, that stated, "Attached is the executed Collateral Assignment. Jerry signed as a show of good faith that the parties will reach an accord. *Obviously if a full agreement is not reached, then I would ask that this document be voided and held for naught.*" (Emphasis added.) (Joint Ex. 1). As indicated, attached to the email was a document titled, "Collateral Assignment of Interests and Contract Rights for Purposes of Security." Among other things, the proposed "contract" listed in the section concerning "pledge of collateral" that Stone was pledging a security interest in his entire equity interest in Bay Point Properties, LLC, as new collateral.

{¶19} However, the proposed contract did *not* have an interest rate listed for the repayment of the money that appellants owed Johnson, and the parties were in the process of exchanging emails discussing what the interest rate would be when the May 9, 2016, email was sent. Moreover, the record is clear that the issue of Bay Point Properties was included at the inception of these negotiations and was never resolved; the May 9, 2016, email and attachment only being the latest proposal regarding these properties.

{¶20} Subsequently, in the following days, the parties came to an agreement on an interest rate, but Stone and Stone's partner in Bay Point indicated that Johnson could not exercise a mortgage on Stone's one-half equity interest in Bay Point, indicating that Bay Point could not be used as collateral as was suggested under the written loan modification proposal signed by Johnson.[4]

{¶21} The trial court analyzed the evidence presented and determined that there was no sufficient meeting of the minds to establish a novation in this case. The trial court specifically found that "It appears that the negotiations between [Johnson] and [appellants] were contingent on negotiations between defendant Stone and his partner in the Baypoint [sic] Properties limited liability corporation.

---

[4] According to a letter written by Michael Rumer, Bay Point's attorney, Bay Point was owned 50/50 by Stone and Jeff Snyder. Bay Point had an appraised value of approximately $5 million. It had mortgage indebtedness of approximately $3 million. Stone was indebted to Bay Point for approximately $300,000. Johnson proposed on May 25, 2016, to release his second mortgage and the indebtedness owed him for Stone assigning 70% of his interest in Bay Point to Johnson. It seems that Stone believed, as did Bay Point's attorney, that Stone's entire interest in Bay Point was already more valuable than the amount owed to Johnson.

Plaintiff wanted interest in Baypoint [sic] as additional collateral[.] * * * The other member of Baypoint [sic] (Snyder) would not agree." (Doc. No. 89). The trial court pointed to a May 19, 2016 email from appellants' attorney indicating that Johnson was looking for something that could not be given (regarding Bay Point as collateral), and that the matter needed to be finalized, indicating that it was not at that time. (*Id.*)

**{¶22}** The evidence supports the trial court's finding in this matter and we cannot find that the trial court's decision was against the manifest weight of the evidence. Appellants attempt to argue that they had a valid, enforceable agreement on May 9, 2016, even though appellants made it clear that Stone's interest in Bay Point could not be used as collateral *after* the May 9, 2016, proposal had been sent. In fact, there were further discussions regarding Bay Point until this lawsuit ensued, and the discussions regarding an interest rate also continued until after May 9, 2016.[5]

**{¶23}** Finally, there was no conclusive written loan modification agreement signed by both parties and the emails that were continuously exchanged debating details of what should go into a final written modification agreement merely showed offers and counteroffers. We cannot see how the trial court erred in finding that a

---

[5] Johnson's attempt to acquire a security interest in Bay Point is evident prior to the purported May 9, 2016, agreement as well, given that it was listed as early as the May 3, 2016, written proposal contained in the record. Thus Bay Point was not, as appellants suggested at oral argument, something that Johnson attempted to acquire at the last minute.

valid novation did not occur in this case as we cannot see exactly what the trial court would have enforced as the purported contract of novation in this matter. Therefore, appellants' assignment of error is overruled.

*Conclusion*

**{¶24}** For the foregoing reasons, appellants assignment of error is overruled and the judgment of the Allen County Common Pleas Court is affirmed.

***Judgment Affirmed***

**ZIMMERMAN, P.J. and PRESTON, J., concur.**

**/jlr**