[Cite as *State ex rel. Calhoun v. Indus. Comm.*, 2019-Ohio-720.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Richard W. Calhoun, | : | |
| Relator, | : | |
| v. | : | No. 17AP-820 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

D E C I S I O N

Rendered on February 28, 2019

*Plevin & Gallucci Co., L.P.A.,* and *Frank L. Gallucci, III; Paul W. Flowers Co., L.P.A.,* and *Paul W. Flowers,* for relator.

[*Dave Yost*], Attorney General, and *John Smart,* for respondent Industrial Commission of Ohio.

*Jones, Funk & Associates LPA,* and *Glenn R. Jones,* for respondent Lincoln Electric Holding, Inc.

IN MANDAMUS
ON OBJECTIONS TO MAGISTRATE'S DECISION

KLATT, P.J.

{¶ 1} Relator, Richard W. Calhoun, commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its order granting the motion of respondent, Lincoln Electric Holding, Inc., to suspend his claim pursuant to R.C. 4123.651, and to enter an order denying the motion.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate found that relator failed to

demonstrate a clear legal right to have the suspension of his claim lifted given his refusal to undergo psychological testing proposed by his employer's examining physician. Therefore, the magistrate has recommended that we deny relator's request for a writ of mandamus.

{¶ 3} Relator has filed objections to the magistrate's decision. In essence, relator argues that the commission's Medical Examination Manual ("manual") gives him the right to refuse psychological testing by his employer's examining physician. Therefore, relator contends his refusal constitutes "good cause" under R.C. 4123.651(C). Based solely upon this alleged good cause, relator argues the commission cannot suspend his claim. We disagree.

{¶ 4} The question before us is not whether relator had the right to refuse psychological testing. Rather, the question is whether his refusal to subject himself to psychological testing by his employer's examining physician constitutes good cause under R.C. 4123.651(C), thereby preventing the suspension of his claim. We conclude it does not.

{¶ 5} As noted by the magistrate, the manual sets forth guidelines for commission medical examiners. The manual itself expressly states "[t]his Manual presents Commission policies for independent medical examinations and medical file reviews." The manual is not directed toward examinations performed by an employer's doctor. Moreover, an employer's right to have a claimant examined is set forth in R.C. 4123.651:

> (A) The employer of a claimant who is injured or disabled in the course of his employment may require, without the approval of the administrator or the industrial commission, that the claimant be examined by a physician of the employer's choice one time upon any issue asserted by the employee or a physician of the employee's choice or which is to be considered by the commission.
>
> * * *
>
> (C) If, without good cause, an employee refuses to submit to any examination scheduled under this section * * * his right to have his claim for compensation or benefits considered, if his claim is pending before the administrator, commission, or a district or staff hearing officer, or to receive any payment for compensation or benefits previously granted, is suspended during the period of refusal.

{¶ 6} The manual has no effect on the employer's right to have a claimant examined pursuant to R.C. 4123.651(A). Moreover, if a claimant's refusal to submit to an examination automatically constitutes good cause, R.C. 4123.651(C) would be a nullity. Therefore, relator's reliance on the manual as the basis for good cause under R.C. 4123.651(C) is misplaced.

{¶ 7} Relator has advanced no other argument for why he had good cause to refuse psychological testing by the employer's doctor. Absent a showing of good cause, suspension of the claim is required during the period of refusal. R.C. 4123.651(C). For these reasons, we overrule relator's objections.

{¶ 8} Following an independent review of this matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny relator's request for a writ of mandamus.

*Objections overruled; writ of mandamus denied.*

DORRIAN and LUPER SCHUSTER, JJ., concur.

## APPENDIX

### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Richard W. Calhoun, | : | |
| Relator, | : | |
| v. | : | No. 17AP-820 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

### M A G I S T R A T E ' S   D E C I S I O N

### Rendered on September 5, 2018

*Plevin & Gallucci Co., L.P.A.,* and *Frank L. Gallucci, III; Paul W. Flowers Co., L.P.A.,* and *Paul W. Flowers,* for relator.

*Michael DeWine*, Attorney General, and *John Smart,* for respondent Industrial Commission of Ohio.

*Jones, Funk & Associates LPA,* and *Glenn R. Jones,* for respondent Lincoln Electric Holding, Inc.

### IN MANDAMUS

{¶ 9} In this original action, relator, Richard W. Calhoun, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate the August 21, 2017 order of its staff hearing officer ("SHO") granting the August 11, 2017 motion of respondent Lincoln Electric Holding, Inc. ("Lincoln Electric"), that requests suspension of the claim pursuant to R.C. 4123.651, and to enter an order denying the motion.

Findings of Fact:

{¶ 10} 1.  On March 19, 2000, relator sustained an industrial injury while employed as a press operator for Lincoln Electric, a self-insured employer under Ohio's workers' compensation laws.  The industrial claim is allowed for:  "Lumbar sprain; thoracic/lumbar disc displacement; L4-L5 disc herniation; discitis lumbar L4-L5; osteomyelitis L4-5."

{¶ 11} 2.  On April 27, 2017, at his own request, relator was examined by psychologist James M. Medling, Ph.D.  In his four-page narrative report, Dr. Medling opines:

> Diagnostically, he presents with Depressive Disorder NEC which converts to an ICD-10 diagnosis of Major Depressive Disorder, Single Episode, Unspecified (F32.9). His major depression is a direct and proximate result of his 3/19/00 work injury. Psychological counseling is recommended.

{¶ 12} 3.  In June 2017, citing Dr. Medling's report, relator moved that the claim be additionally allowed for the psychological condition identified in Dr. Medling's report.

{¶ 13} 4.  By letter dated July 12, 2017, Lincoln Electric denied relator's motion for an additional claim allowance.

{¶ 14} 5.  Earlier, by letter dated July 11, 2017, Lincoln Electric informed relator that he was scheduled for examination by psychologist Robert G. Kaplan, Ph.D., on August 10, 2017 at a time and location specified in the letter.

{¶ 15} 6.  Relator appeared for the examination with Dr. Kaplan as scheduled on August 10, 2017.  However, on the advice of his attorney, relator refused psychological testing.

{¶ 16} 7.  On August 10, 2017, Dr. Kaplan wrote:

> I was able to complete the structured diagnostic clinical interview portion of my examination today of Mr. Calhoun. However, he refused to complete any psychological testing on the advice of his attorney. I contacted his attorney's office to verify this statement and received confirmation that his attorney did not want Mr. Calhoun to complete any psychological testing. I tried to explain that I could not complete my examination without psychological testing. His office still insisted that no psychological testing be completed. In over 30 years of performing these examinations, I have never encountered such a refusal before. Psychological testing is routinely part of any psychological examination. Therefore,

> I will not be able to provide a report to you of my examination until this matter is resolved with his attorney and Mr. Calhoun is able to complete the standard psychological testing that is routinely provided in such examinations.

{¶ 17}  8.  Citing the August 10, 2017 correspondence from Dr. Kaplan, on August 11, 2017, Lincoln Electric moved for suspension of the claim pursuant to R.C. 4123.651.

{¶ 18}  9.  Earlier, on August 1, 2017, the commission issued notice of a hearing before a district hearing officer ("DHO") on relator's motion for an additional claim allowance.  The hearing was scheduled for August 17, 2017.

{¶ 19}  10.  On August 16, 2017, the commission's hearing administrator mailed a "compliance letter" that grants the employer's August 11, 2017 motion for suspension of the claim.  The compliance letter states in part:

> By this letter, the Employer's motion filed 08/11/2017 is granted.
>
> The Employer has made application to be afforded relief under R.C. 4123.651(C) for the reason that the Injured Worker has refused without good cause to submit to a complete Employer's psychological examination scheduled under R.C. 4123.651(A).
>
> Following review of the claim file and relevant evidence, it is the finding of the Hearing Administrator that the Employer has demonstrated good cause for the relief requested. IT IS, THEREFORE, THE FINDING OF THE HEARING ADMINISTRATOR THAT ALL ACTIVITY IN THE CLAIM IS SUSPENDED.
>
> AS SUCH, THE HEARING SCHEDULED FOR THURSDAY, 08/17/2017 AT 2:30 P.M. IN CLEVELAND IS CANCELLED.
>
> In order to remove this suspension, the Injured Worker must notify the Employer in writing that the Injured Worker is willing to appear for an examination as scheduled by the Employer. The Employer must then reschedule and complete that examination within 45 days of receiving the Injured Worker's notice of intent to appear.
>
> After the Injured Worker has attended the rescheduled examination, the parties shall immediately notify the Hearing Administrator, in writing, of the Injured Worker's attendance. THE ATTENDANCE BY THE INJURED WORKER TO THE

RESCHEDULED PSYCHOLOGICAL EXAMINATION SHALL AUTOMATICALLY REVOKE THE SUSPENSION AND NO OTHER COMPLIANCE LETER WILL BE ISSUED.

{¶ 20} 11. By letter dated August 16, 2017, relator, through counsel, objected to the suspension of the claim. Relator requested a hearing on the matter.

{¶ 21} 12. On August 17, 2017, Dr. Kaplan wrote to counsel for Lincoln Electric:

> I am responding to your request for additional information regarding the need for psychological testing with Mr. Calhoun. The psychological testing that is required usually takes most individuals less than two hours to complete. It is a standard test battery consisting of widely accepted measures of psychopathology (the Minnesota Multiphasic Personality Inventory), and pain and psychosocial functioning (Brief Battery for Health Improvement-2). The testing procedure involves having the subject read items and mark their answers on an answer sheet. The tests require no more than a sixth grade reading level. The requested psychological testing is not a physically intrusive procedure, such as taking blood samples or diagnostic imaging. Mr. Calhoun would be allowed to take breaks whenever he felt it was necessary and any physical limitations, such as needing to stand or stretch occasionally, or use the bathroom, could be readily accommodated. He would complete the testing in a quiet, well-appointed, well-lit, air-conditioned office, with a comfortable executive chair. He can have water or other beverages served to him by my administrative staff, as he requests. It would not even be necessary for him to complete the testing all in one sitting, if he prefers.
>
> The Minnesota Multiphasic Personality Inventory-2 is the most widely used test for assessment of chronic pain patients. The Brief Battery for Health Improvement-2 has specific norms for chronic pain patients as well as the general population and is also recommended for assessment of chronic pain patients. Research shows that psychological diagnoses based upon psychological testing are more accurate than those based upon clinical judgment. Furthermore, these tests provide a more objective basis upon which to base a diagnosis and determine symptom severity than clinical judgment.

(Footnote omitted.)

{¶ 22} 13. On August 21, 2017, an SHO heard the August 11, 2017 motion of Lincoln Electric for suspension of the claim.

{¶ 23} Apparently, at the hearing, relator presented pages 69 through 71 from the commission's Medical Examination Manual effective January 1, 2017.

{¶ 24} Pages 69 through 71 of the manual appear at a section of the manual captioned "Mental and Behavioral Examinations." On page 71, the manual states:

> **ALLOWED DIAGNOSITC TESTING**
>
> MMPI and Bender-Gestaldt are considered part of a psychological examination and are not billable. Injured Workers may decline testing, and if this is the case, note the refusal and base opinions on the available data.

(Emphasis sic.)

{¶ 25} 14. Following the August 21, 2017 hearing, the SHO issued an order granting the August 11, 2017 motion of Lincoln Electric for suspension of the claim. The SHO's order explains:

> The evidence on file indicated that the Injured Worker filed a motion on 06/29/2017 requesting that the claim be allowed for the condition of major depressive disorder, single episode, unspecified. In support of that motion, the Injured Worker submitted a report from James Medling, Ph.D., dated 04/27/2017. Nowhere in Dr. Medling's report is there any evidence that an MMPI test was administered and no copies of test results, interpretation of test, or physician's summary or comments correlating the interpretation of the test have been submitted into evidence. There is no evidence that the Injured [Worker] has undergone a MMPI test.
>
> The Employer, in response to the motion for additional allowance for the psychological condition, set up an examination with Robert Kaplan, Ph.D. The Injured Worker did appear for the examination with Dr. Kaplan and cooperated with the diagnostic clinical portion of the exam. However, the Injured Worker refused to undergo the MMPI testing on advice of his attorney. In an 08/11/2017 report, Dr. Kaplan indicated that the MMPI was a routine part of his psychological examination and evaluation. Dr. Kaplan also indicated that he would not be able to provide the Employer with a report since the Injured Worker refused to take the MMPI test. In his 08/17/2017 report, Dr. Kaplan stated that

psychological testing provides a much more objective basis upon which to base a diagnosis and to determine symptom severity. Dr. Kaplan communicated to the Employer that he was unable to provide a defense report without the MMPI testing.

The Employer then filed a motion to suspend on 08/16/2017 [sic] based on the Employer's inability to get a defense medical report. The Hearing Administrator suspended the claim on 08/16/2017. The Injured Worker timely objected to the suspension and the claim was set for hearing on this objection on this date.

At hearing, counsel for the Injured Worker argued the Injured Worker had the right to decline taking the MMPI test based on the Industrial Commission's medical examination manual. The manual provides in pertinent part:

"MMPI and Bender-Gestaldt are considered part of a psychological exam and are not billable. Injured Worker may decline testing, and if this is the case, note the refusal and base opinions on the available data."

It should be noted that the Industrial Commission's medical examination manual is instructive for Industrial Commission medical examiners who are hired by the Industrial Commission almost exclusively to exam[ine] Injured Worker's on the issue of permanent total disability. In these claims, the issue of allowance of the psychological conditions has already been adjudicated. Regardless, the cited Industrial Commission medical examination manual is not binding on Bureau of Workers' Compensation doctors or on the Employer's doctors.

The issue is whether the Injured Worker's refusal to take a MMPI test is a basis for suspension of the claim.

The Injured Worker's position is that the refusal is based on the Industrial Commission medical examination manual. As indicated previously this manual is a guideline for the Industrial Commission specialists and is not binding on examinations performed by the Employer.

* * *

The Employer's position is supported by the 08/17/2017 report of Dr. Kaplan. First, Dr. Kaplan points out that the

requested MMPI testing is not a physically intrusive procedure. Dr. Kaplan indicated that the Injured Worker would be allowed to take breaks whenever he wanted. The Injured Worker could stand or stretch as needed. The Injured Worker could take bathroom breaks whenever the Injured Worker wanted to. Dr. Kaplan stated the following:

"He would complete the testing in a quiet, well-appointed, well-lit, air conditioned office, with a comfortable executive chair. He can have water or other beverages served to him by my administrative staff, as he requests. It would not even be necessary for him to complete the testing in one sitting, if he prefers."

Based on the foregoing the Staff Hearing Officer concludes that the test is not a physically intrusive test.

Further, Dr. Kaplan explains the need for the MMPI testing:

- ❖ Tests provide a standardized administration and scoring procedure that limits the influence of conscious and unconscious examiner bias.
- ❖ Tests have known rates of accuracy and error (unlike clinical judgments).
- ❖ Tests have norms that provide a common reference point of comparison.
- ❖ Tests provide quantifiable measurement of symptoms.
- ❖ Tests have validity measures that gauge the accuracy of a subject's symptom reporting.
- ❖ Tests are more comprehensive and efficient at obtaining information than a clinical interview.
- ❖ Tests measure multiple personality and cognitive symptoms simultaneously.

  Clearly the benefits of having the MMPI testing completed is supported by Dr. Kaplan. No contrary medical and/or psychological evidence has been submitted to refute these benefits.

  Clearly, the report of Dr. Kaplan dated 08/17/2017 gives persuasive and valid reasons for having the Injured Worker undergo the MMPI testing. The Staff Hearing Officer does not find the Injured Worker's reliance on an Industrial Commission medical examination manual binding on Employer's examination. The Staff Hearing Officer does not find the Industrial Commission medical examination

> manual to be a valid reason to refuse to take the MMPI test in light of the 08/17/2017 report of Dr. Kaplan.
>
> Therefore the Staff Hearing Officer finds the Injured Worker has not shown good cause for failing to take the MMPI test as previously scheduled.
>
> Accordingly, the Employer's request to suspend the claim is granted. To remove the suspension, the Injured Worker must notify the Employer in writing his willingness to take the requested MMPI testing so that Dr. Kaplan can complete his report. The Employer must schedule the MMPI testing and complete the testing and examination within 45 days of receiving the Injured Worker's notice of intent to appear.
>
> After the Injured Worker has completed the MMPI testing, the parties shall notify the Hearing Administrator in writing of the Injured Worker's attendance. The attendance of the Injured Worker and completion of MMPI testing shall automatically revoke the suspension.
>
> A compliance letter will not be issued revoking the suspension.

{¶ 26} 15. On November 21, 2017, relator, Richard W. Calhoun, filed this mandamus action.

Conclusions of Law:

{¶ 27} The issue is whether relator has shown a clear legal right to refuse to undergo the psychological tests offered by Dr. Kaplan at the August 10, 2017 examination.

{¶ 28} Finding relator has not demonstrated a clear legal right to refuse to undergo the psychological tests offered by Dr. Kaplan at the August 10, 2017 examination, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.

{¶ 29} The parties have stipulated to the commission's Medical Examination Manual effective January 1, 2017.

{¶ 30} The manual provides an "Introduction" on page one, stating:

> This Manual presents Commission policies for independent medical examinations and medical file reviews. The purpose of the independent medical examination (IME) is to

determine the degree of impairment resulting from an allowed work injury. Most examinations are to assist the Commission in the consideration of Permanent Total Disability (PTD). The first section of the manual explains administrative and examination policies common to all Commission independent examinations and file reviews. The remaining six sections of the manual describe specific examination requirements for evaluating various body parts, regions, or organ systems affected by an industrial injury or disease, and some special considerations related to maximum medical improvement.

{¶ 31} The manual sets forth administrative policies on pages three through four. At page three, the manual states:

**Legal Status**
Examiners are independent contractors. Referral for medical review or examination represents a single fee-for-service commitment for the Commission and the examiner.

\* \* \*

**Impartiality**
Examinations are to be performed by physicians and psychologists with no bias or conflict of interest with respect to the Injured Worker, the employer, or the workers' compensation system.

\* \* \*

Commission examinations are independent examinations. No authorization for treatment of the Injured Worker is implied or given in the Commission's request for examinations.

{¶ 32} Beginning at page 31, the manual provides instructions for medical examinations by body systems.

{¶ 33} Beginning at page 69, the manual provides instructions for mental and behavioral examinations.

{¶ 34} As earlier noted, at page 71, the manual states:

**ALLOWED DIAGNOSTIC TESTING**

MMPI and Bender-Gestaldt are considered part of a psychological examination and are not billable. Injured

Workers may decline testing, and if this is the case, note the refusal and base opinions on the available data.

{¶ 35} It should be noted that the employer's scheduling of an examination by Dr. Kaplan and the commission's suspension of the claim were pursuant to R.C. 4123.651, which provides in part:

> (A) The employer of a claimant who is injured or disabled in the course of his employment may require, without the approval of the administrator or the industrial commission, that the claimant be examined by a physician of the employer's choice one time upon any issue asserted by the employee or a physician of the employee's choice or which is to be considered by the commission.
>
> * * *
>
> (C) If, without good cause, an employee refuses to submit to any examination scheduled under this section * * * his right to have his claim for compensation or benefits considered, if his claim is pending before the administrator, commission, or a district or staff hearing officer, or to receive any payment for compensation or benefits previously granted, is suspended during the period of refusal.

{¶ 36} Significantly, before the commission, relator argued that his alleged right to refuse psychological testing offered by Dr. Kaplan is supported by the commission's medical examination manual, and specifically at page 71 of the manual.

{¶ 37} The SHO's order of August 21, 2017 rejected relator's interpretation of page 71 of the manual. The SHO's order states:

> At hearing, counsel for the Injured Worker argued the Injured Worker had the right to decline taking the MMPI test based on the Industrial Commission's medical examination manual. The manual provides in pertinent part:
>
> * * *
>
> It should be noted that the Industrial Commission's medical examination manual is instructive for Industrial Commission medical examiners who are hired by the Industrial Commission almost exclusively to exam[ine] Injured Worker's on the issue of permanent total disability. In these claims, the issue of allowance of the psychological conditions has already been adjudicated. Regardless, the cited Industrial

Commission medical examination manual is not binding on
Bureau of Workers' Compensation doctors or on the
Employer's doctors.

{¶ 38} Clearly, based on a careful examination of the commission's medical examination manual, the SHO's order of August 21, 2017 is correct in its finding that the manual is not binding on examinations performed by the employer. Thus, the magistrate concludes that relator's assertion that he had a right to refuse to undergo the psychological tests offered by Dr. Kaplan is not supported by the manual.

{¶ 39} Accordingly, based on the above analysis, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).