[Cite as *Dunn v. Devco Holdings, Inc.*, 2023-Ohio-680.]

## IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

DELYNDA A. DUNN,

    PLAINTIFF-APPELLEE,

    v.

DEVCO HOLDINGS, INC.,

    DEFENDANT-APPELLANT,
    -And-

BUREAU OF WORKERS'
COMPENSATION,

    DEFENDANT-APPELLEE.

CASE NO. 14-22-18

**O P I N I O N**

Appeal from Union County Common Pleas Court
Trial Court No. 2020-CV-0111

**Judgment Affirmed**

**Date of Decision:  March 6, 2023**

**APPEARANCES:**

    *Samuel J. Warden* **for Appellant**

    *John H. Goodman* **for Appellee, Delynda Dunn**

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Devco Holdings, Inc. ("Devco") appeals the judgment of the Union County Court of Common Pleas, alleging that the trial court's judgment was against the manifest weight of the evidence. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} Delynda A. Dunn ("Dunn") worked in auto body repair and painting for Devco. Tr. 8. On August 2, 2017, while she was painting a car at work, she "felt and heard a pop with immediate pain" in the area of her right hip and groin. Tr. 9. She reported her injury but returned to work the next day. Tr. 10. However, the condition of her right hip continued to worsen until she was no longer able to perform the responsibilities associated with her job. Tr. 10. Dunn then filed a claim with the Bureau of Workers' Compensation. Doc. 6. Devco was a self-insured employer. Doc. 2, Ex. A. This claim was allowed on the basis of several physical injuries to the area surrounding her hip. Doc. 2, Ex. A.

{¶3} On October 30, 2019, Dunn was evaluated by a licensed psychologist, Dr. Princess Black ("Dr. Black"). Doc. 25, Ex. A. The purpose of this evaluation was to determine whether Dunn "suffer[ed] from any psychological conditions, and whether it can be directly or causally related to the physical conditions recognized in her claim." Doc. 25, Ex. A. As part of this evaluation, Dr. Black had Dunn complete the Minnesota Multiphasic Personality Inventory-2 ("MMPI-2"). Prior to

her consultation with Dr. Black, Dunn had sought mental health treatment in 2015 and 2016 after one of her supervisors had been stalking and threatening her. Tr. 21-22. This resulted in her receiving treatment for anxiety and depression. Tr. 22.

{¶4} On November 22, 2019, Dunn filed for an additional allowance based on her experience of "persistent depressive disorder, with anxious distress," and "persistent major depressive episode, moderate." Doc. 1, Ex. A. On December 19, 2019, Dr. Donald J. Tosi ("Dr. Tosi") performed an examination of Dunn as part of the process of evaluating whether a psychological condition should be allowed with her workers' compensation claim. Tosi Depo. Tr. 12. Dr. Tosi later sat for a deposition to discuss the conclusions he drew from this evaluation. *Id.*

{¶5} On February 3, 2020, this matter was presented to a district hearing officer with the Ohio Industrial Commission. Doc. 1, Ex. A. On February 7, 2020, the hearing officer issued a decision that allowed Dunn's claim for "persistent depressive disorder with anxious distress and persistent major depressive episode moderate." Doc. 1, Ex. A. Based on the findings of Dr. Black, the district hearing officer found that the evidence supports the conclusion that Dunn had the named "conditions as a result of the industrial injury." Doc. 1, Ex. A.

{¶6} On February 12, 2020, Devco appealed this decision to a staff hearing officer at the Ohio Industrial Commission. Doc. 1, Ex. B. This matter was heard on May 13, 2020. Doc. 1, Ex. B. On May 16, 2020, the staff hearing officer issued a decision that modified the February 7, 2020 decision. Doc. 1, Ex. B. This decision

concluded that Dunn's claim would be "allowed for substantial aggravation of persistent depressive disorder, with anxious distress, late onset, with persistent major depressive disorder, moderate." Doc. 1, Ex. B. On May 19, 2020, Devco appealed the decision to the Ohio Industrial Commission. Doc. 1, Ex. C. However, the Ohio Industrial Commission released a decision on June 4, 2020 that refused this appeal. Doc. 1, Ex. C.

{¶7} On August 7, 2020, Devco filed an appeal with the Union County Court of Common Pleas. Doc. 1, 2. On February 25, 2021, Devco filed a motion for summary judgment, arguing that Dunn's claim must fail as a matter of law because she failed to substantiate her claim with objective evidence of a substantial aggravation. Doc. 25. On May 13, 2021, the trial court denied Devco's motion for summary judgment. Doc. 36.

{¶8} On May 25, 2021, this matter came to a bench trial before a magistrate at which Dunn and Dr. Black testified. Tr. 3, 5. On December 1, 2021, the magistrate released a decision that recommended a judgment in favor of Devco. Doc. 42. The magistrate had noted that Dr. Black had indicated that "the MMPI 2 test * * * elicits subjective answers regarding the patient's likes/dislikes, ways of thinking, and preferences" but that "the results and scoring of the MMPI are objective." Doc. 42. However, the magistrate concluded that Dunn had "fail[ed] to set forth objective evidence of the substantial aggravation as required by R.C. 4123.01(C)." Doc. 42.

{¶9} On January 31, 2022, Dunn filed objections to the trial court's decisions. Doc. 48. On July 5, 2022, the trial court issued a judgment entry that found in favor of Dunn. Doc. 50. The trial court stated that

> **the testimony of Dr. Black [is] persuasive in that her diagnosis is based upon objective diagnostic findings, objective clinical findings, or objective test results as required by R.C. 4123.01(C). The Court further finds that Plaintiff's psychiatric condition arose from the injury based upon the correlation of Plaintiff's persistent and increasing physical symptoms from the injury and onset of Plaintiff's psychiatric symptoms.**

Doc. 50. The trial court then stated that Dunn "has the right to participate in the workers' compensation system for the additional condition of substantial aggravation of persistent depressive disorder, with anxious distress, late onset, with persistent major depressive disorder, moderate." Doc. 50.

*Assignment of Error*

{¶10} Devco filed its notice of appeal on July 28, 2022. Doc. 53. On appeal, it raises the following assignment of error:

> **The trial court's decision is against the manifest weight of the evidence, as appellee did not present any evidence of objective diagnostic findings, objective clinical findings, or objective test results that demonstrated a substantial aggravation of appellee's persistent depressive disorder, with anxious distress, late onset, with persistent major depressive disorder, moderate.**

Devco argues that the MMPI-2 is not an objective test and that the MMPI-2 test results do not show substantial aggravation.

*Legal Standard*

**{¶11}** "The purpose of Ohio's workers' compensation system is to provide compensation to employees and their dependents for injuries or death that occur in the course of employment." *Johnson v. Conti Tech USA, Inc.*, 3d Dist. Union No. 14-21-23, 2022-Ohio-1552, ¶ 13. "A claimant must establish an injury to participate in Ohio's workers' compensation system." *Cassens Transport Co. v. Bohl*, 3d Dist. Seneca No. 13-11-36, 2012-Ohio-2248, ¶ 15. *See* R.C. 4123.54(A). R.C. 4123.01(C) defines "injury" and reads, in its relevant part, as follows:

> **(C) 'Injury' includes any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment. 'Injury' does not include:**
>
> **\* \* \***
>
> **(5) A condition that pre-existed an injury unless that pre-existing condition is substantially aggravated by the injury. Such a substantial aggravation must be documented by objective diagnostic findings, objective clinical findings, or objective test results. Subjective complaints may be evidence of such a substantial aggravation. However, subjective complaints without objective diagnostic findings, objective clinical findings, or objective test results are insufficient to substantiate a substantial aggravation.**

R.C. 4123.01(C)(5). "A plaintiff does not necessarily need to present pre-injury medical documentation to establish a substantial aggravation, but there must be some objective medical evidence that establishes that the accident substantially aggravated a preexisting condition." *Salyers v. Buehrer*, 1st Dist. Hamilton No. C-

140756, 2015-Ohio-4507, ¶ 7. This provision is to "be liberally construed in favor of employees * * *." R.C. 4123.95.

**{¶12}** "In civil cases, as in criminal cases, the sufficiency of the evidence is quantitatively and qualitatively different from the weight of the evidence." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, second paragraph of the syllabus.

> **[i]n a civil case, in which the burden of persuasion is only by a preponderance of the evidence, rather than beyond a reasonable doubt, evidence must still exist on each element (sufficiency) and the evidence on each element must satisfy the burden of persuasion (weight).**

*Cullen v. State Farm Mut. Auto. Ins. Co.*, 137 Ohio St.3d 373, 2013-Ohio-4733, 999 N.E.2d 614, ¶ 20, quoting *Eastley* at ¶ 19.

> **When reviewing a civil matter under the manifest weight of the evidence '[t]he [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'**

*Johnson v. Stone*, 2019-Ohio-318, 129 N.E.3d 1030, ¶ 13 (3d Dist.), quoting *Eastley* at ¶ 20, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983).

> **Moreover, when weighing the evidence, 'the court of appeals must always be mindful of the presumption in favor of the finder of fact.' [*Eastley*] at ¶ 21. More specifically, 'every reasonable**

> **intendment and every reasonable presumption must be made in favor of the judgment[.]'** *Id***.** quoting *Seasons Coal Co., Inc. v. [City of] Cleveland***, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191-192 (1978). 'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment[.]'** *Id***.**

*Johnson* at ¶ 14. "Judgments supported by some competent, credible evidence will not be reversed on appeal as being against the manifest weight of the evidence." *University of Findlay v. Martin*, 2017-Ohio-7016, 95 N.E.3d 715, ¶ 10 (3d Dist.). "A judgment should be reversed as being against the manifest weight of the evidence 'only in the exceptional case in which the evidence weighs heavily against the [judgment].'" *State v. Hill*, 2d Dist. Montgomery No. 25172, 2013-Ohio-717, ¶ 8, quoting *Martin* at 175.

*Legal Analysis*

{¶13} Under this assignment of error, Devco advances two main arguments. In its first argument, Devco asserts that the MMPI-2 is not an objective test. In this case, Dunn underwent mental health evaluations from Dr. Black on October 30, 2019 and from Dr. Tosi on December 19, 2019. During the course of these evaluations, Dunn took the MMPI-2, the Beck Depression Inventory, and the Beck Anxiety Inventory. Tr. 45. Dr. Black and Dr. Tosi both indicated that the Beck Depression Inventory and the Beck Anxiety Inventory were subjective tests. Tr. 75. Tosi Depo. Tr. 34-35. Doc. 25, Ex. D, Tr. 30-31.

{¶14} However, Dr. Black and Dr. Tosi provided additional testimony about the nature of the MMPI-2. At the bench trial, Dr. Black testified that

**[t]he MMPI-2 is a standardized objective test. It's one of the most popular ones and researched ones. It's often given, as you probably see in BWC evaluations and psych evaluations. It gives you the idea of the person's personality characteristics and helps with your diagnosis formulation. It's a—the full test is 567 true and false questions. And then those are combined together and scored to give you kind of a concrete and quantifiable results.**

Tr. 41. She was later asked how this test could be considered objective:

**The MMPI-2 was developed out of standardized testing. It was kind of norm with the population. I think they used 2,600 participants. And then with that, they came up with different scales than what those scales might mean or the combination scales might mean for an individual. So it provides a concrete and quantifiable result. So although * * * the person's answers are subjective, the actual results and (Inaudible) scoring it makes it objective.**

Tr. 59. During a deposition, Dr. Black affirmed that, "when you're talking about objective versus subjective between the MMPI-2 and the Beck Depression Inventory, you're really focusing in on the amount of statistical analyses that has gone into comparing results[.]" Doc. 25, Ex. D, Tr. 33. *See also Id.* at 21, 30, 32. Dr. Black further affirmed that "the objectivity of the test" should not be "confuse[d] with the subjective responses of the testee[.]" Tr. 88.

{¶15} In his deposition, Dr. Tosi also discussed the MMPI-2. Tosi Depo. Tr. 9, 22, 33-34, 54. He stated the following:

**Well, I performed the Minnesota Multiphasic Personality Inventory 2, which is a measure of classic clinical pathology, and**

**the test is an excellent measure of whether or not people are suffering from mental disorders and, also, it allows us to assess the extent to which people may be faking symptoms, minimizing symptoms, and overall gives us a pretty good picture of how these individuals are functioning in their psychological lives.**

Tosi Depo. Tr. 22. He further stated that the MMPI-2 is "a very subtly constructed test that seems to do its job of picking up whether an individual suffers from some degree of psychopathology." *Id*. at 34.

{¶16} Dr. Tosi testified that the questions in the MMPI-2 elicit subjective responses from the person taking the test. Tosi Depo. Tr. 34. Subsequently, the following exchange occurred about the quality of the information produced by the MMPI-2:

**[Attorney:] So despite the fact that the test relies upon information provided by the testee, the test is actually designed to provide insights as to what those responses mean and provide you with a hypothesis from which to work and correlate from your other findings; is that correct?**

**[Dr. Tosi:] Yes. That's said quite well, yes.**

**\* \* \***

**[Attorney:] Okay. So it's safe to say then that this test was specifically designed to provide an element of objectivity to these subjective responses from the individual; is that right?**

**[Dr. Tosi:] In this sense, because the individual—when we utilize such a test such as the MMPI, that it's really between the individual taking the test—the examiner is out of the room—the test itself, and the computer which scores the tests and offers the interpretation. Then I get the report. See, in that sense, I would say that we could talk of objectivity.**

\* \* \*

**[Attorney:] So when you get the report after it's interpreted, then you consider that an objective measure which you have to then correlate with all of your other findings to arrive at an opinion; is that right?**

**[Dr. Tosi:] I consider it a source of information, as I said earlier, that is between the test, the person, the computer. In that sense, it's independent of me being personally involved in that process.**

*Id*. at 55-56. He then affirmed that the MMPI-2 "is a test that [he] \* \* \* routinely will perform and utilize in arriving at an opinion in a case[.]" *Id*. at 56.

{¶17} In response to this testimony, Devco points to *Little v. Dayton Pub. Schools*, 2d Dist. Montgomery No. 25970, 2015-Ohio-197, ¶ 37-39. In *Little*, the Second District concluded that there was an "absence of objective evidence" in this case and "disagree[d] with Little's assertion that the DSM–IV, her history, and the psychological tests that Reynolds administered satisfy the requirements of R.C. 4123.01(C)(4)."[1] *Id*. at ¶ 37. However, in *Little*, the only tests mentioned were a mood disorder questionnaire and a Beck Depression Inventory. *Id*. at ¶ 12. There was no mention of Little having taken the MMPI-2. The Second District did not conclude that no psychological examination could satisfy the conditions set forth in what is now R.C. 4123.01(C)(5) but only that the examinations presented as

---

[1] Am. H.B. No. 447 moved the location of the provision that discusses the substantial aggravation of preexisting injuries from R.C. 4123.01(C)(4) to R.C. 4123.01(C)(5). This provision became effective on September 23, 2022. Since *Little, supra*, was decided on January 23, 2015, the prior statutory code section is quoted therein. *Little, supra*, at ¶ 37.

evidence by Little could not satisfy the requisite conditions in that particular case. Thus, this citation does not ultimately support the assertion made herein by Devco.

**{¶18}** Devco also asserts that a test that incorporates subjective responses cannot be objective but does not offer any supporting evidence or arguments that could establish this claim. The testimony presented by the parties provided evidence from which the trial court could conclude that the MMPI-2 provided objective results.[2] Thus, with its first argument under this assignment of error, Devco has not established that the trial court's conclusion in this case is against the manifest weight of the evidence.

**{¶19}** In its second argument, Devco argues that, even if the MMPI-2 is an objective test, the results of this test do not show substantial aggravation in this case. In this case, Dunn testified at the bench trial about the mental health history and the circumstances surrounding her injury. She stated that, in 2015 and 2016, she sought mental health treatment, visiting several doctors and taking prescription medications to help her address anxiety and depression. Tr. 21-23, 28-29. Dunn explained that, during this timeframe, she had a supervisor at work who was stalking and threatening her. Tr. 22. She stated that this situation came to an end when this supervisor was fired in 2015 and then moved to Arizona. Tr. 23, 32.

---

[2] In passing, a number of courts have referred to the MMPI-2 as an objective personality inventory. *State v. Ream*, 3d Dist. Allen No. 1-12-39, 2013-Ohio-4319, ¶ 18; *State v. Hardie*, 141 Ohio App.3d 1, 2, 2000-Ohio-2044, 749 N.E.2d 792, 793 (4th Dist. 2001); *Kurfess v. Gibbs*, 6th Dist. Lucas No. L-09-1295, 2011-Ohio-2698, ¶ 43; *Stitt v. Stitt*, 8th Dist. Cuyahoga No. 47606, 1984 WL 3576, *2 (Nov. 8, 1984); *State ex rel. Castle v. State Teachers Retirement Sys.*, 2016-Ohio-1245, 63 N.E.3d 484, ¶ 23 (10th Dist.). *See also State ex rel. Calhoun v. Industrial Commission of Ohio*, 10th Dist. Franklin No. 17AP-820, 2019-Ohio-720, ¶ 25.

**{¶20}** Dunn testified that she received the injury that led to her workers' compensation claim on August 2, 2017. Tr. 9. She said, "I was painting a car and I did my sidestep, side lunge squat, and I felt and heard a pop with immediate pain in my right groin and my right hip area." Tr. 9. The condition of the area around her hip continued to deteriorate until she was no longer able to perform her job with Devco. Tr. 10-11. She testified that, in 2018, she had a total hip replacement but that this procedure was not successful in stopping her pain. Tr. 14. Dunn also stated that, before her injury, she worked forty to fifty hours a week at her job; was an avid golfer; and enjoyed hiking in her free time. Tr. 12. She then indicated that she has not been able to participate in these activities since her injury. Tr. 11-12.

**{¶21}** After her hip replacement, Dunn sought counseling and scheduled a consultation with Dr. Black. Tr. 17. When asked how her mental health struggles in 2015 contrasted with those she was addressing with Dr. Black, Dunn stated,

> **[t]hey're totally different. I know I have anxiety and panic attacks now. But the anxiety and panic attacks then, I mean, somebody was basically trying to take my life and hurt me. No. I don't think any—nobody's trying to hurt me here. It's just—it's a different—it's—it's different. When I have panic attacks now when I wake up at two o'clock in the morning, it's usually about— and it's going to sound weird—it's about I don't know how to do anything. That's what I'm thinking is I don't know how to do anything any more and I panic.**

Tr. 23. Dunn further testified that, in 2019, her knee was replaced to facilitate the physical therapy that she was receiving for her hip.[3]  Tr. 33.

{¶22} Dr. Black testified that she conducted several evaluations to assess the state of Dunn's mental health at a consultation on October 30, 2019. Tr. 45-47. Dr. Black stated her conclusions as follows:

> **In my initial evaluation with the records that I had, I concluded that she had persistent depressive disorder with anxious distress with a persistent major depressive episode. And she also had panic disorder, but that was not related to the injury.**
>
> **\* \* \***
>
> **Prior to her injury, she was not receiving any treatment. She was not symptomatic as far as depression. The last treatment she received was in 2016. And since then she had been fully functioning, successful, everything. Following her injury, especially after her hip surgery, she started to present with a number of depressive symptoms—depressed mood, loss of interest, crying spells, loss of motivation, helplessness and worthlessness, and difficulty sleeping. And there were no other reasons that would cause this except for her—the pain her injury was causing her.**

Tr. 46, 47. In support of this conclusion, Dr. Black pointed to a cognitive assessment that had been performed on Dunn in April of 2018. Tr. 53. The results of this assessment were normal. Tr. 53. This prior assessment was also taken before Dunn had undergone the hip replacement surgery that did not correct all of the issues that Dunn had experienced since her injury. Tr. 53. Dr. Black testified:

---

[3] Her testimony indicates that the knee replacement surgery was not a part of her workers' compensation claim. Tr. 37.

> **[W]hen I first met with her, she still had some hope that maybe treatment would get her back to, you know, at least able to get back to work and do what she loved. And then as time went on, she began to lose that hope and then that really impacted her mentally, obviously.**

Tr. 52. Dr. Black indicated that Dunn received "a poor prognosis" and that this caused a "kind of transition * * *." Tr. 54.

{¶23} In his deposition, Dr. Tosi testified that he performed a mental evaluation of Dunn on December 19, 2019 and reached the following conclusion:

> **I opined that the individual would have this disorder, this depression—persistent depressive disorder, or this alleged condition, in the absence of the injury, given her history, as I've come to know it.**

Tosi Depo. Tr. 20, 25. He stated that the reason for this conclusion was that Dunn had "been dealing with these issues—psychological issues * * * over the course of years before the injury." *Id*. at 25. *See also Id*. at 27.

{¶24} On cross-examination, Dr. Black testified that, at the time of her initial diagnosis, the records that she received that documented Dunn's mental health history were incomplete. Tr. 64-65. She was aware of several of the issues that Dunn had sought treatment for previously based on disclosures from Dunn at their consultation. Tr. 64. However, Dr. Black admitted that she became aware of a portion of Dunn's mental health history only when she was able to review a report authored by Dr. Tosi. Tr. 64-65. In response to this information in Dr. Tosi's report, Dr. Black modified her diagnosis, adding that Dunn had experienced a "substantial

aggravation" to reflect the fact that "she had a history of past depression." Tr. 65.

*See* Doc. 25, Ex. C. In the addendum to her diagnosis, she also stated the following:

> **Recall that the claimant [Dunn] had not received any mental health treatment for approximately one year prior to her injury. Additionally, the main issues addressed in her prior mental health treatment were anxiety and panic in response to a specific, threatening circumstance and then the lingering effects of that issue. \* \* \* While she did have a prior history of depression, it was limited and finite. The claimant never had to cope with the loss of her physical capabilities, chronic physical pain, loss of her job, constant need for medical care, and loss of independence, until she was injured at work on 08/02/2017.**

Doc. 25, Ex. C. During her deposition, Dr. Black affirmed that Dunn's prior history of medical treatment indicated that, "after the injury in this case to her hip, she—at some point thereafter her depression and anxiety was substantially aggravated" and that this was true "[e]specially after her surgery." Doc. 25, Ex. D. Tr. 46. *See also Id*. at 43-44. She further stated that the depression that Dunn was facing after her injury was different in "type, severity \* \* \*." Tr. 48.

{¶25} Dr. Tosi examined Dunn on December 19, 2019. Tosi Depo. Tr. 41. At a deposition, he testified that he believed that Dunn would have had "persistent depressive disorder \* \* \* in the absence of the injury, given her history \* \* \*." *Id*. at 25. Dr. Tosi testified that he had reviewed Dr. Black's report and believed that her "conclusions were based primarily on subjective information." *Id*. at 36. He further stated "the alleged psychological condition was not substantially aggravated by the initial injury \* \* \*." *Id*. at 32.

**{¶26}** In this case, Dr. Black and Dr. Tosi presented different conclusions of whether Dunn's injury substantially aggravated a preexisting condition. The trial court, as the finder of fact, was free to resolve this conflict by making a credibility determination. After considering the evidence presented by the parties, the trial court "f[ound] the testimony of Dr. Black persuasive in that her diagnosis is based upon objective diagnostic findings, objective clinical findings, or objective test results as required by R.C. 4123.01(C)." Doc. 36. A review of the record indicates that this conclusion is based upon some competent, credible evidence. Thus, Devco has not demonstrated that the trial court rendered a judgment that was against the manifest weight of the evidence. For this reason, Devco's second assignment of error is overruled.

*Conclusion*

**{¶27}** Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of Union County Court of Common Pleas is affirmed.

***Judgment Affirmed***

**MILLER, P.J. and ZIMMERMAN, J., concur.**

**/hls**